*REC # 115482*

*No Summons Issue)*

*66*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Mario Miles, by of and through ABUNDANT HEALTH HOME CARE LLC.
In care of:
269 Walker St suite 332
Detroit MI [48207]
313-333-0455

Case:2:18-cv-12295
Judge: Friedman, Bernard A.
MJ: Davis, Stephanie Dawkins
Filed: 07-23-2018 At 11:40 AM
CMP ABUNDANT HEALTH HOME CARE LLC V
STATE OF MICHIGAN, ET AL (LG)

**Plaintiff:**

**v.**

STATE OF MICHIGAN
MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, (MDHHS)
Mary Rossman, SUPERINTENDENT for MDHHS
Kathleen Stiffler, Acting Director Medical Services Administration for MDHHS
Michelle Martin, Policy Director MDHHS
Here in after MDHHS and its agents.
*Stephen Fitton Director of Medical Service Administration for MDHHS*
*Chris Priest    Director of Medical Service Administration for MDHHS.*
**Defendant.**

_____/

Jurisdiction and venue are otherwise proper in this court pursuant to
**title 28 § 1331, and U S Const  5th, 14th Amendments and art. 1, s. 9, cl. 1,**

## PARTIES

**Plaintiff:** ABUNDANT HEALTH HOME CARE LLC a provider agency actively enrolled in Michigan's
Medicaid Home Help Care Program administered by the MDHHS

**Defendants**

STATE OF MICHIGAN
MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVISES (MDHHS).
Mary Rossman, SUPERINTENDENT for MDHHS
Kathleen Stiffler, Acting Director Medical Services Administration for MDHHS
Stephen Fitton, Acting Director Medical Services Administration for MDHHS
Chris Priest, Acting Director Medical Services Administration for MDHHS
Michelle Martin, Policy Director MDHHS

1

## COMPLAINT AND REQUEST FOR
## EMERGENCY EX- PARTE TEMPORARY
## RESTAINING ORDER & PRELIMINARY INJUNCTION

### Judicial Cognizance:

The term given to the information that a trier of fact including administrative hearing bodies MUST act on regardless of the fact that is not proved in evidence and pursuant to Article V of the US Constitution.

"Indeed, no more than [affidavits] are necessary to make the prima facia case." United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981); cert. denied, 50 U.S.L.W. 2169; S. Ct. March 22, 1982; and an uncontested allegation in an affidavit must be accepted as fact, Morris v. National Cash Register, 44 S.W.2d 433. "Allegations in affidavit in support of motion must be considered as true in absence of counter-affidavit." [Group v Finletter, 108 F. Supp. 327 Federal case of Group v Finletter, 108 F. Supp. 327]

## AFFIDAVIT OF STATEMENT OF FACTS

1. Plaintiff is being forced under threat duress and coercion by the MDHHS and its agents to convert all home care contractors into employees pursuant to the unlawful new policy guidelines listed in (**EXHIBIT A) MSA Bulletin # 18-09 and MSA Bulletin # 17-32** in order for agency to continue to receive the agency provider hourly rate of $13.50

2. If plaintiff complies with the unlawful demands of the MDHHS and its agent's plaintiff /agency will suffer irreparable harm as the agency will immediately become insolvent due to the excessive financial liability of insurance, taxes and other financial requirement that the agency is being compelled to comply with it will diminish profits causing the complete destruction of the agency.... **See Exhibit-D financial proof of insolvency resulting from implementation of new policies**

3. If plaintiff refuses to comply with the unlawful demands of the MDHHS and its agents the agencies pay will be reduced from the agency rate of $13.50/ hr to a rate of $9.25/hr.

4. Plaintiff affirms and asserts that the agency has an obligation via contract to pay its contractors a pay rate of $10.00/hr.

5. The reduction in pay by the MDHHS and its agents will cause the agency to suffer irreparable harm as this action of the MDHHS and its agents would diminish all profits and create an automatic condition of insolvency and a complete destruction of the agency/business.

## COUNT I IMPAIRING THE OBLIGATION TO CONTRACT

6. The MDHHS and its agents are impairing the agencies obligation to contract in violation of the Constitution of the United States, Art. 1, s. 9, cl. 1, declares that no state shall "pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts."

7. Plaintiff affirms the fact plaintiff is being forced by the MDHHS and its agents to convert all home care contractors into employees is an unconstitutional impairment of a contract that causes agency to suffer irreparable harm due to diminished profits caused by unlawful implementation of new policy guidelines listed in **(EXHIBIT A) MSA Bulletin # 18-09** and **(EXHIBIT B) MSA Bulletin # 17-32** and a total destruction of plaintiff's agency.

- The Supreme Court has adopted a three-part test to interpret this "facially absolute" command. Energy Reserves Grp., Inc. v. Kan. Power and Light Co., 459 U.S. 400, 410 (1983). First, we must ask "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." Id. at 411 (citation omitted). If it does, then we must ask if "the State . [has] a significant and legitimate public purpose behind the regulation." Ibid. (citation omitted). If one can be identified, the final inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purposes justifying" the state action.

- Whenever a right to repeal, alter, or amend a charter is reserved to the state in the- act of incorporation itself, its exercise will not impair the obligation of the contract . Commonwealth v. Fayette Co. Rd., 55 Penn. St. 452; Miners' Bank v. U. S, 1 Greene (Iowa) 553 ; P'errin v. Oliver, 1 Minn. 202 ; In re Oliver Lee & Co.'s Bank, 21 N. Y. 9

- By contrast, it is unconstitutional for the government to disturb a property interest arbitrarily, even if it announces in advance its intent to do so. See, eg., Goldberg v. Kelly, 397 U.S. 254 (1970).

- An unconstitutional act is not law; it confers no rights; it imposes no duties affords no protection; it creates no office; it is in legal contemplation, as an inoperative as though it had never been passed." -Norton V. Shelby County 118 US 425.

- Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518 (1819) (charter granted to college trustees is covered by contract clause and therefore legislative act altering the charter is an unconstitutional impairment of a contract). 36 U.S. (11 Pet.) 420 (1837).

8. Plaintiff affirms and asserts that MDHHS and agents enforcement of their unlawful the new polices listed in **(EXHIBIT A)** MSA Bulletin # 18-09 and **(EXHIBIT B)** MSA Bulletin # 17-32 have created a condition of Unconstitutional Conditions for the agency.

9. Plaintiff affirms and asserts whether agency complies with the demands of MDHHS and its agents implementation and enforcement of the new polices or not the agency will suffer irreparable harm due to the diminished profits and becoming automatically insolvent and out of business.

10. Plaintiff affirms and asserts the MDHHS and its agents implementation and enforcement of the new polices will not only cause plaintiff's agency to face insolvency but a whole section of Agency provider will be unconstitutionally denied the common right to earn a livelihood as participants in the home help program.

3

- The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. See Zobel v. Williams, 457 U.S. 55, 61-63 (1982); United States Dept. of Agriculture v. Moreno, 413 U.S. 528, 535 (1973).

11. Plaintiff affirms and asserts the MDHHS and its agents have provided no just cause, public purpose or rational basis to justify the implementation and enforcement of their new polices as required by law showing their action to be **ultra virus**.

12. Plaintiff affirms asserts that the Federal Courts have long established the Laws of a sufficiency of process to determine whether the state action to the adjustment or substantial impairment of a contractual relationship is of a character appropriate to the public purposes justifying" the state action or the unauthorized and unlawful exercise of powers by the MDHHS and its agents to effect an erroneous deprivation through the procedures used causing plaintiff to suffer irreparable harm.

- Pursuant to Mathews v. Eldridge, 424 U.S. 319 (1976), the sufficiency of process is determined by weighing (1) "the private interest that will be affected," (2) "the risk of an erroneous deprivation through the procedures used," (3)."the probable value, if any of additional substitute procedural safeguards," and (4) "the [g]overnment's interest, including the fiscal and administrative burdens" that additional process might entail.

### THE SUPREME COURT HAS ADOPTED A THREE-PART TEST TO INTERPRET THIS "FACIALLY ABSOLUTE" COMMAND.

(a). First, we must ask "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.

(b). Second If it does, then we must ask if "the State . [has] a significant and legitimate public purpose behind the regulation.

(c ). Third if one can be identified,

(d). Fourth the final inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purposes justifying" the state action.... Energy Reserves Grp., Inc. v. Kan. Power and Light Co., 459 U.S. 400, 410 (1983).

### U.S.CONST. Amend. XIV, §1 DUE PROCESS OF LAW

13. Plaintiff affirms the enactment and enforcement of the unauthorized and unlawful radical new polices listed in **(EXHIBIT A)** Bulletins, MSA 18-09 and **(EXHIBIT B)** Bulletins, MSA 17-32will deprive the Agency and its owner of fundamental interests in property and liberty protected by the Federal and State Constitutions, along with Federal and State existing rules and laws causing plaintiff irreparable harm.

14. Plaintiff affirms alleges that the defendants MDHHS and its agents substantive policy guidelines contained in **(EXHIBIT A)** Bulletins, MSA 18-09 and **(EXHIBIT B)** Bulletins, MSA 17-32and implemented by the defendants are unauthorized and unlawful in violation of state statues MCL 400.111a and MCL 24.224 The U.S Constitution and the State of Michigan due process and, Federal Statue 42 U.S. Code § 1396a, Title 5 Administrative procedures ACT, 42 U.S. Code § 1983 Deprivation of rights under color of law, 42 U.S. Code § 1985 Conspiracy against rights, 15 U.S. Code § 1. Restraint of Trade, the Constitution of the United States.

15. Plaintiff affirms that the enactment and enforcement of the radical new polices listed in **(EXHIBIT A)** 18-09 and **(EXHIBIT B)** Bulletins, MSA 17-32 is an unauthorized and unlawful exercise of an abuse of power by the MDHHS and its agents causing plaintiff to suffer irreparable harm.

16. Plaintiff affirms that the MDHHS and its agents enacted and are implementing and enforcing their unauthorized and unlawful radical new polices listed in **(EXHIBIT A) 18-09 and (EXHIBIT B) Bulletins, MSA 17-32** without adhering to or any regards for plaintiff due process of law causing irreparable harm.

## COUNT II VIOLATION PROCEDURAL DUE PROCESS

- **U.S.CONST. amend. XIV, §1. The Fourteenth Amendment Due Process clause is a limitation on state power**, while the Fifth Amendment Due Process clause limits federal power. Halinger v. Davis, 146 U.S. 314, 319 (1892).

- Procedural due process, at a minimum, requires that the government, prior to depriving an individual of a property right, provide the affected individual with notice of the charges and a meaningful opportunity to contest the factual basis for those charges. Morrison v. Warren, 375 F.3d 468, 473 (6th Cir.2004) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

## COUNT III SUBSTANTIVE DUE PROCESS

- **Substantive due process guarantees that certain "deprivations of life, liberty or property** are subject to limitations regardless of the adequacy of the procedures employed." Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir.1992) (internal quotation marks omitted).

- At its core, this constitutional right protects against government incursions on fundamental rights, government actions affecting an individual that "shock the conscience," and government actions that are arbitrary and capricious in nature. Range v. Douglas, 763 F.3d 573, 588 (6th Cir.2014). The City's actions in this case were arbitrary and capricious because they lacked any rational basis, and therefore, the judgment of the district court should be affirmed on this issue as

- This understanding continued to be accepted until many years after passage of the fourteenth amendment. Beginning with the just compensation clause in 1897, many provisions of the Bill of Rights were held to be applicable to the states through the due process clause of the fourteenth amendment. See, e.g., Duncan v. Louisiana, 391 U.S.

5

145, 147-48 (1968) (sixth amendment's right to jury trial); Chicago. B. & Q. R.R. v. Chicago, 166 U.S. 226 (1897)..

- This explains the inference to be drawn from the cases that "standing" to challenge official action is more apt to exist when that action is not within the scope of official authority than when the objection to the administrative decision goes only to its correctness. See United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 314-315; Pennsylvania R. Co. v. Labor Board, 261 U.S. 72; Ex parte Williams, 277 U.S. 267, 271.7 The objection to judicial restraint of an unauthorized exercise of powers is not weighty.

17. The policies contained in the subject bulletins, as applied to the Agencies, are not reasonable, fair, effective, efficient; are not in conformance with law; and are not in conformance with the state plan for Medical assistance adopted and approved by the US Department of Health and Human Services.

- **Medicaid"** means benefits under the program of medical assistance established under title XIX of the social security act, 42 USC 1396 to 1396w-5, and administered by the department under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b.

18. The Bulletins include provisions that provide many new policies or revisions to existing policies, rules and laws that include, but are not limited to:

   a. policies that authorize severe penalties and summary disenrollment for even minor compliance violations,

   b. policies that seek to require for the first time in the program's history that the Agencies convert all part-time contracted care givers to employees of their respective agencies,

   c. policies that provide penalties in contravention of MCL 400.111e,

   d. prohibit only 2the Agencies from allowing their Medicaid clients from using a Personal Choice and Acknowledgment of Provider Selection in order to chose the care provider of their choice notwithstanding any minor criminal convictions the worker may have disclosed to the Medicaid beneficiary which workers are allowed under federal and state laws.while allowing every other organization type that provides the same or similar Medicaid paid assistance to the same beneficiaries the right to use the Personal Choice and Acknowledgement Selection. Agencies are the only group that is carved out as an exception to the provider choice rule,

   e. unreasonably restricts agencies from accepting Medicaid beneficiaries for services if they are already receiving the services directly through the MDHHS

   f. provides for recoupment of payments for failure to comply with documentation requirements that are beyond the Agencies' control.

   g. provides for penalties of disenrollment and or payment recoupment for agency non-compliance with requirements that are solely within the dominion and control of the department, are subject to the limitation of the department's computer

6

system or are otherwise not entirely within the Agency's power, control, or knowledge.

h. provides unreasonable reporting and enforcement of penalties in a summary manner for an Agencies' updating requirements of information changes relative to its workers that are not entirely within the Agency's knowledge or control.

i. L provides unreasonably short (10 calendar day) reporting time frames for worker updates which are 30 days for other provider types.

j. provides for Immediate disenrollment of an Agency without prior notice or an opportunity to be heard,

k. k, provides for suspension of an Agency during any investigation of the. agency pending the outcome of the investigation which is inconsistent with rules for all other provider types and providers of home help services under other programs.

l. L policies that arbitrarily prescribe the retention of records by the Agencies which the agencies have been denied access to by the department, such as "Time and Task Authorizations" from the department, or records which are not necessary and are not customarily obtained by the Agencies for the Medicaid beneficiaries such as medical records.

m. m, policies that seek to roll back or freeze the Agencies' long-established pay rate The Department intends to enforce the new policies against the Agencies with adherence to the substantive due process rights guaranteed under the Michigan and US Constitutions.

19. Plaintiff affirms and asserts MDHHS and its agents implementation and enforcement of its radical new polices is unlawful, arbitrary, irrational, irresponsible, reckless, an abuse of process as well as an abuse of public trust, and injurious to the public and whose sole purpose and intent is for no just cause other than the economic disenfranchisement and destruction of the Home Help Agencies.

## AUTHORITY TO EXCLUDE, DISENROLLMENT OR TERMINATE

20. Plaintiff reaffirms and asserts that the MDHHS enacted MSA Bulletin #18-09 on May 1, 2018 to become effective on July 1.2018 seeking to add to or change existing Department policy guidelines in effect for the Medicaid Home Help Program relating to the Agency Provider standards; participation, record retention, qualifications, disenrollment and enrollment conditions, discipline, requirements, provider operating standards, payment conditions, reporting requirements, penalties, appeals and more; is in total violation of its controlling Laws as well as Michigan and U.S.a Federal Constitutions.

21. Plaintiff affirms and asserts that the authority of the MDHHS and its agent is by and **through 42 U.S. Code § 1396a - State plans for medical assistance** and must at all times adhere to comply and remain in harmony with 42 U.S. Code § 1396a.

• **Medicaid"** means benefits under the program of medical assistance established under title XIX of the social security act, 42 USC 1396 to 1396w-5, and administered by the department under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b.

**42 U.S. Code § 1396a - State plans for medical assistance**

**(p)EXCLUSION POWER OF STATE; EXCLUSION AS PREREQUISITE FOR MEDICAL ASSISTANCE PAYMENTS; "EXCLUDE" DEFINED**

(1)In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under subchapter XVIII under section 1320a–7, 1320a–7a, or 1395cc(b)(2) of this title.

(2)In order for a State to receive payments for medical assistance under section 1396b(a) of this title, with respect to payments the State makes to a medicaid managed care organization (as defined in section 1396b(m) of this title) or to an entity furnishing services under a waiver approved under section 1396n(b)(1) of this title, the State must provide that it will exclude from participation, as such an organization or entity, any organization or entity that—

could be excluded under section **1320a–7(b)(8)** of this title (relating to owners and managing employees who have been convicted of certain crimes or received other sanctions),

   a. (B)has, directly or indirectly, a substantial contractual relationship (as defined by the Secretary) with an individual or entity that is described in section 1320a–7(b)(8)(B) of this title, or
   b. (C) employs or contracts with any individual or entity that is excluded from participation under this subchapter under section 1320a–7 or 1320a–7a of this title for the provision of health care, utilization review, medical social work, or administrative services or employs or contracts with any entity for the provision (directly or indirectly) through such an excluded individual or entity of such services

(3) As used in this subsection, the term "exclude" includes the refusal to enter into or renew a participation agreement or the termination of such an agreement

22. Plaintiff affirms and asserts that the authority of the MDHHS and its agents to exclude, disenrollment or terminate is by and through **42 U.S. Code § 1320a–7**

**42 U.S. Code § 1320a–7** - Exclusion of certain individuals and entities from participation in Medicare and State health care programs

**Mandatory exclusion**

The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b (f) of this title):

### (1) **Conviction of program-related crimes**

8

Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

(2) **Conviction relating to patient abuse**
Any individual or entity that has been convicted, under Federal or State law, of a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service.

b.   (3) **Felony conviction relating to health care fraud**.

23. **Plaintiff affirms that no other relief is available.**

24. Plaintiff asserts that an emergency ex parte temporary restraining order is necessary and proper as the MDHHS seeks to reduce agencies pay rate to $9.25 within the next seven days making it impossible to meet payroll resulting in irreparable harm due to unreasonable loss of profits resulting in the complete destruction of plaintiff's business unless relief is granted by the court

25. Plaintiff moves the Court for a preliminary injunction and temporary restraining order pursuant to Fed. R. Civ. P. 65.

26. **Plaintiff makes this motion on the grounds that:**

- Plaintiff is likely to prevail on the merits of his claim; Plaintiff is guaranteed to prevail under Article 6 section 2 of the U.S. Constitution as the policies in question are in conflict with federal law title 42 USC, and alters a fundamental rights of liberty protected by the 5th and 14th amendments

- Plaintiff will suffer irreparable harm if preliminary relief is not granted; Plaintiff will lose his business, common right to occupation, and reputation within the community

- Third parties will not be harmed by the relief sought;  The injunction will allow agencies to operate under the previous policies which have been in places since the inception of the program and contract services as currently allowed under the controlling federal statutes under title 42 USC

- The public interest will be served by granting the relief sought. This will allow current recipients of services under the program to continue to receive needed services uninterrupted, allow for general public to be able to provided services under the program without disenfranchisement and serve to preserve faith in the public trust.

27. **Plaintiff specifically requests that the Court issue a temporary restraining order and preliminary injunction to:**

(a). Enjoin Defendants from enforcing reduction of agency pay rate from 13.50 to $9.25 for failing to comply with the unlawful policy, unless relief is granted by the court it will

9

cause a complete destruction of plaintiff's business as it would leave plaintiff unable to pay its contractors the agreed rate of $10.00/h.

(B}. Enjoin Defendants from failing to show their Constitutional Delegation of Authority to create and enforce a policy that can lawfully impair plaintiff obligation of contract and causes a total destruction of plaintiff's agency.

(c ). Enjoin Defendants from enacting unlawful MSA Bulletin #18-09 on May 1, 2018 to become effective on July 1,2018 seeking to add to or change existing Department policy guidelines in effect for the Medicaid which impair plaintiff's obligation to contract, restrain trade and diminish plaintiff's profits to the point of irreparable harm.
(d). Enjoin Defendants from the continued breach and unlawful deprivation of the established Agency rate of 170% to 200% of minimum wage created by **(EXHIBIT C) MSA Bulletin #09-59.**on September 29, 2017 to become effective on November 1, 2017 seeking to freeze agency pay rates at the rates published as of January 1, 2018, notwithstanding prior rules that set the Michigan program Agency rate at 170% to 200% of minimum wage in 2008 and 2009

(e ). Enjoin Defendants from failing to show their Constitutional Delegation of Authority to deny plaintiff the established Agency rate of 170% to 200% of minimum wage created by **(EXHIBIT C) MSA Bulletin #09-59.**

## COUNT IV ULTRA VIRUS ACTS

28. Plaintiff affirms and asserts the fact that anyone professing or claiming to have Authority to impose or enforce Color of Law on any individual are accountable to have knowledge of that and must have written proof of their D.OA. (Delegation Order of Authority).

29. Plaintiff affirms and asserts that defendants have failed to show a valid delegation of authority to alter or impair plaintiffs obligation to contract and there acts are acts are **Ultra Virus**.

- These complaints do not raise the question of the personal liability of public officials for money damages caused by their ultra vires acts. See Spalding v. Vilas, 161 U.S. 483. **They ask only for declaratory and injunctive relief.**

- In reaching this conclusion, the Court referenced the applicable delegation orders published in the CFR. See also Sittler v. Board of Control of Michigan College of Mining and Technology, 333 Mich. 681, 53 N.W.2d 681, 684 (1952)("The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority"); Phillips v. Fidalgo Island Packing Co., 238 F.2d 234 (9th Cir. 1956); Flavell v. Dept. of Welfare, City and County of Denver, 355 P.2d 941, 943 (Colo. 1960); Tulsa Exposition and Fair Corp. v. Board of County Commissioners, 468 P.2d 501, 507 (Ok. 1970)("Public officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law"); In re Benny, 29 B.R. 754, 762 (N.D. Cal. 1983) ("an unlawful

or unauthorized exercise of power does not become legitimated or authorized by reason of habitude"); Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1523 (D.C. Cir. 1984) ("when an officer acts wholly outside the scope of the powers granted to him by statute or constitutional provision, the official's actions have been considered to be unauthorized"); Outboard Marine Corp. v. Thomas, 610 F.Supp. 1234, 1242 (N.D. Ill. 1985)("Acting without statutory power at all, or misapplying one's statutory power, will result in a finding that such action was ultra vires").

- **We long have granted relief to parties whose legal rights have been violated by unlawful public action,** although such action made no direct demands upon them. Columbia Broadcasting System v. United States, 316 U.S. 407; Pierce v. Society of Sisters, 268 U.S. 510; Buchanan v. Warley, 245 U.S. 60; Truax v. Raich, 239 U.S. 33.

## COUNT V RESTRAINT OF TRADE

30. Plaintiff affirms that this new policy guidelines listed in **in (EXHIBIT A) 18-09 and (EXHIBIT B) Bulletins, MSA 17-32** that the MDHHS and its agents are enforcing restrains the agencies right to contract as well restraining and eliminating the agency's ability to make a profit.

31. The resulting Action is restraint of Trade in violation of Act 274 of 1984 Statute MICHIGAN ANTITRUST REFORM ACT (445.771 – 445.788) and 15 U.S. Code § 1. Restraint of trade and irreparable harm which unless relief is granted by the court will cause an excessive and unreasonable loss of profits resulting in the complete destruction of plaintiff's business.

- Unless an act restricting the participation of the citizen in ordinary occupations can be shown to fall within the police power, such act is void as violating the constitutional right of the citizen to liberty and the pursuit of happiness. Frazer v. Shelton, 320 Ill. 253, 150 N.E. 696, 43 A.L.R. 1086

## 15 U.S. Code § 1. Trusts, etc., in restraint of trade illegal; penalty

a. Illegal contract that in any way colludes to damage another's opportunity or ability to carry out a business.

32. **The doctrine of restraint of trade is rooted in English common law and codified under U.S. statutes** (specifically, the Clayton Act and the Federal Trade Commission Act) and various state antitrust laws. While federal (Sherman Antitrust Act) and some state laws treat restraint of trade and other antitrust acts as a crime, parties that suffer losses from such actions may seek monetary recovery in civil court. This article focuses on civil lawsuits for economic losses resulting from unlawful restraint of trade

- Restrictions and regulations may be imposed within the proper limits without in any way impairing the fundamental right to engage in occupations. Comm. V. Strauss, 191 Mass. 545, 78 N. E. 136, 11 L.R.A(N.S.) 968, 6 Ann. Cas. 842; State v Havorka, 100 Minn. 249, 110 N.W. 870, 8 L.R.A. (N.S.) 1272, 10 Ann. Cas. 398; People v. Warden, 183 N.Y.

223, 76 N.E 11, 2 L.R.A. (N.S.) 859, 5 Ann. Cas. 325; Waid v. Ft. Worth (Tex. Civ. App.) 258 S.W. 1114, citing R.C.L.

## COUNT VI DENIED 5TH AMENDMENT LIBERTY RIGHT OCCUPATION

33. Plaintiff asserts and affirms the MDHHS and its agents implementation and enforcement of their radical new polices modifies, abridges and denies plaintiff the right to earn a living by following the ordinary occupations as a Home Help Provider Agency, in violation of the fundamental principles of jurisprudence.

## 11 American Jurisprudence §336. Business or occupation pages 1147-1148.

- Generally.- The right to earn a living by following the ordinary occupations of life is protected by, the Constitution;20 such protection is particularly found in the guaranties of the Fourteenth Amendment .21 It has been said that the preservation of such right is the principal purpose of the Constitution itself.22 and is of the very essence of the personal freedom and opportunity that it was the purpose of the Fourteenth Amendment to secure.23 The right is fundamental,24 natural,25, inherent1 and inalienable,2 and is one of the most sacred.3 and most valuable rights of a citizen.4 A person's business occupation, or calling is "property" within the meaning of the constitutional provisions as to due process of law5 and is also included in the right to liberty and the pursuit of happiness...Tucson v Stewart, 45 Ariz. 36, 40 P. (2d) 72, 96 A.L.R. 1492; Coffeyville Viltrified Brick & Tile Co. v Perry, 69 Kan. 297, 76 P. 848, 66 L.R.A. 185, 1 Ann. Cas. 936; Roraback v. Motion Picture Mach. Operators Union, 140 Minn. 481, 168 N.W. 766, 169, N.W. 529, 3 A.L.R. 1290; Seattle v. Proctor, 183 Wash. 293, 48 P. (2d) 238, citing R.C.L; Northwestern Nat. Ins. Co. v. Fishback, 130 Wash. 490, 228 P. 516, 36 A.L.R.

- Terrace v Thompson, 263 U.S. 197, 68 L. ed. 255, 44 S. Ct. 15; Traux v Corrigan, 257 U.S. 312; 66 L. ed. 254, 42 S. Ct. 124, 27 A.L.R. 375; The fourteenth amendment to the Constitution considered: the right to pursue any lawful trade or a vocation, without other restraint than such as equally affects all persons, is one of the privileges of citizens of the United States which cannot be abridged by state legislation / dissenting opinions of Mr. Justice Field, Mr. Justice Bradley, and Mr. Justice Swayne, of U.S. Supreme Court, in the New Orleans slaughter-house cases.

- Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere cant. **Commissioner v. Newman, 159 F.2d 848, 851 (2d Cir. 1947)**

- Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes. **Gregory v. Helvering, 69 F.2d 809, 810 (2d Cir. 1934)**

- See **Estate of Stranahan v. Commissioner, 472 F.2d 867, 867 (6th Cir. 1973)**

- **Also see Summa Holdings, Inc. v. Comm'r of Internal Revenue, 848 F.3d 779, Sixth Circuit (2017)**

- **Law Office of John H. Eggertsen P.C. v. Comm'r, 800 F.3d 758, Sixth Circuit (2015)**

- <u>**ONE SHALL NOT BE DEPRIVED OF HIS RIGHTS EXCEPT BY DUE PROCESS OF LAW**</u>: Den v. Murray 18 How. 272; Com. v. Slifer 25 Penn. St. 28; he must have an opportunity for hearing and defense: Rex v. Chancellor 1 Strange 557; In re Hammersmith Rent Charge 4 Exch. 97; Archbishop of Canterbury's Case 1 El. & El. 545; Harper v. Carr 7 Term 266; Rex v. Benn 6 Term 198; Capel v. Child 2 Cr. & J; 558; Abley v. Dale 10 C. B. 71; Williams v. Lord Bagot 3 B. & C. 772; an office is property (2 Bl. Com. 36), and is within constitutional protection: Wammack v. Holloway 2 Ala. 31; Hoke v. Henderson 4 Dev. 19; notice must be given of any proceeding affecting rights and intere'sts: Meade v. Deputy Marshal 1 Brock. 324; Queen v. Simpson 10 Mod. 380; Chase v. Hathaway 14 Mass. 222; Arthur v. State 22 Ala. 61; Dullam v. Willson, 53 Mich. 392 (Mich. 1884)

- "The words, "due process of law," were undoubtedly intended to convey the same meaning as the words, "by the law of the land," in Magna Charta. Lord Coke, in his commentary on those words, (2 inst. 50) says they mean due process of law. The constitutions which had been adopted by the several States before the formation of the federal constitution, following the language of the great charter more closely, generally contained the words, " but by the judgment of his peers, or **the law of the land**." Murray's Lessee v. Hoboken Land & Improvement Co. (1856)

- It is manifest it was not left to the legislative power to exact any process which might be devised. The due process article is a restraint on the legislative as well as the executive and judicial powers of government, and cannot be so construed s to leave congress free to make any process "due process of law" by its mere will." Murray's Lessee v. Hoboken Imp. Co. , 18 How. (59 U.S.) 272, 276 (1855).

- See KLAIS V. DANOWSKI, 373 MICH 262; 129 N.W. 2d 414 (1964)

## COUNT VII BREACH OF CONTRACT

34. The controlling contract for Medicaid services including the home help program is **entitled Contract Between United States Department of Health and Human Services Centers for Medicare & Medicaid Services In Partnership with The State of Michigan** and <Entity> Effective: November 1, 2016. **See exhibit G** contract.

35. The above mentioned contract state providers of service under the program may employee or contract

36. The above mentioned contract states on page 281 point 10 Federal law shall govern this Agreement.

37. Plaintiff asserts injury of loss of liberty and federally protected right to contract services

38. Plaintiff asserts injury of loss of liberty to participate as a provider of services due to irreparable financial harm.

39. Plaintiff alleges that MDHHS and its agent's failure to pay the established rate for services under the Michigan Home Help Agency plan of 170% to. 200% of minimum wage rate constitutes a Breach of Contract.

- A party claiming a breach of contract must establish by a preponderance of the evidence **(1) that** there was a contract, **(2)** that the other party breached the contract and**, (3)** that the party asserting breach of contract suffered damages as a result of the breach. Stevenson v. Brotherhoods Mut. Benefit, 312 Mich. 81, 90–91, 19 N.W.2d 494 (1945); Residential Ratepayer Consortium v. Pub. Serv. Comm., 198 Mich.App. 144, 149, 497 N.W.2d 558 (1993) (recognizing that the "preponderance of the evidence" is the quantum of proof in civil cases); see M Civ JI 142.01. This standard means the evidence must persuade the fact-finder that it is more likely than not that the proposition is true. M Civ JI 8.01. A party may meet its burden with circumstantial evidence, Karbel v. Comerica Bank, 247 Mich. App. 90, 97, 635 N.W.2d 69 (2001), and the fact-finder may weigh both the quality and the quantity of evidence presented, Kelly v. Builders Square, Inc., 465 Mich. 29, 39, 632 N.W.2d 912 (2001).

40. A contract claim accrues when the wrong occurs, i.e., when the promise is breached, regardless of when damage results. MCL 600.5827; Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v. Bakshi, 483 Mich. 345, 355, 771 N.W.2d 411 (2009); Tenneco Inc. v. Amerisure Mut. Ins. Co., 281 Mich.App. 429, 458, 761 N.W.2d 846 (2008). The "wrong" on which the contract claim is based is determined by examining the parties' contract. Tenneco, 281 Mich.App. at 458, 761 N.W.2d 846, citing Scherer 270 Mich.App. at 463, 716 N.W.2d 307.

**COUNT VIII UNCONSCIONABLE CONTRACT**

41. Plaintiff affirms and asserts the MDHHS and its agents implementation and enforcement of their radical new polices are oppressive, unconscionable as well as procedural unconscionability.

- Procedural unconscionability refers to the unconscionability in the conditions of contract formation, procedural unconscionability results from inequalities between the parties as to age, intelligence, and relative bargaining power. It disclose that both parties did not freely consent to all terms proposed. The doctrine of unconscionability permits a court to refuse to enforce a contract when it feels that the contract is unfair….In Nichols v. YJ USA Corp., 2009 U.S. Dist. LEXIS 22450 (D. Tex. 2009), the court held that procedural unconscionability means that oppression and unfairness must taint the negotiation process leading to the agreement's formation.

- Procedural unconscionability centers on two factors in contract formation. They are oppression and surprise. Oppression results from the inequality in the bargaining power between the parties those results in the absence of opportunity to the parties. Surprise results from the supposedly agreed hidden terms. [Motsinger v. Lithia Rose-Ft, Inc., 211 Ore. App. 610 (Or. Ct. App. 2007)

42. Plaintiff affirms if the MDHHS and its agents were honoring their own policy regarding agency rate of the 170% to 200% of the minimum wage rate… See **EXHIBIT- C Bulletin** MSA 09-59 AGENCY COUNTY RATES OF PAY.

43. Then the Agency would possibly have enough income margin to implement the radical new policy without damage to its credibility and irreparable harm of insolvency …**See EXHIBIT- E** Financial accounting of implementation of new policy at the stipulated rate of 170% to 200% of the minimum wage rate.

## COUNT IX Title 18 § 242 DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

44. MDHHS and its agents new policies take away the fundamental right to lawfully arraign ones tax affairs to reduce liabilities by elimination of the choice to direct employ or contract services.

45. MDHHS and its agents new policies are ultra vires in violation of federal law and have not been implemented by due course of law.

46. Plaintiff alleges that MDHHS and its agent's failure to pay the established rate for services under the Michigan Home Help Agency plan of 170% to. 200% of minimum wage rate pursuant to See **EXHIBIT- C** Bulletin MSA 09-59 AGENCY COUNTY RATES OF PAY constitutes a Deprivation of plaintiff's Rights to just compensation.

47. **Section 242 of Title 18** makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

48. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority.

49. Plaintiff alleges that MDHHS and its agents come before this court with unclean hands as they have created a condition of irreparable harm and hardship by violating their own policy regarding agency pay rate See **EXHIBIT-C** MSA 09-59 AGENCY COUNTY RATES OF PAY.

## COURT FOUND PRELIMINARY INJUNCTION PROPER IF ECONOMIC LOSS THREATENS THE EXISTENCE OF THE MOVANT'S BUSINESS.

50. The court recognized that generally a preliminary injunction is not appropriate when potential harm to the movant is financial. However, the court found that "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." Id. n2 If a plaintiff's business becomes insolvent and ceases to exist, money damages cannot compensate the plaintiff and there is no adequate remedy at law.

## STARE DECISIS

51. Stare decisis thereby avoids the instability and unfairness that accompany disruption of settled legal expectations. For this reason, the rule of law demands that adhering to our prior case law be the norm. Departure from precedent is exceptional and requires special justification."

52. **The Courts have spoken a showing of 42% decrease in the plaintiff's gross revenues coupled with liabilities exceeding its assets is sufficient for a showing of irreparable harm.**

53. **Plaintiff affirms asserts his claim meets the economic exception requirement**. The MDHHS and its agents are forcing plaintiff to convert all home care contractors into employees causes agency to suffer irreparable harm due to diminished profits in excess of 42% caused by unlawful implementation of new policy guidelines listed in (**EXHIBIT A) MSA Bulletin # 18-09** and a total destruction of plaintiff's agency.

- There is case law holding that there is an exception to that rule where the potential economic loss is so great as to threaten the existence of the movant's business. The Michigan Court of Appeals so held in Northern Warehousing Inc. v. State of Michigan, 2006 Mich App LEXIS 593 (March 7, 2006), reversed on other grounds 2006 Mich LEXIS 996 (May 24, 2006). The Northern Warehousing Court also focused on whether the plaintiff's business is threatened with insolvency.

- The question then becomes what kind of showing does the plaintiff have to make to demonstrate for purposes of obtaining injunctive relief that the defendant's unlawful conduct threatens its solvency? Must its liabilities since the defendant's bad acts started exceed its assets? Must it show that its revenues have declined by well over 50%? In Performance Unlimited v. Questar Publishers, 52 F.3d 1373 (CA 6 1995), the Sixth Circuit found irreparable harm when 60% or more of the plaintiff's gross revenues depended on the defendant's business that the latter had cut off by terminating a contract. However, in Cumberland Heights Foundation, Inc. v. Magellan Behavioral Health, Inc., 2010 U.S. Dist. LEXIS 93738 (M.D. Tenn., September 7, 2010), a case that cited Northern Warehousing, a 45% loss of revenues as a result of the defendant's termination of a contract was deemed to be sufficient to demonstrate irreparable injury. Indeed, the Northern Warehousing Court said that a 42% decrease in the plaintiff's gross revenues, coupled with liabilities exceeding its assets, as a result of the defendant's termination of a contract sufficed for a showing of irreparable harm.

54. **The Injunction Is Proper** due to irreparable harm and injury caused by the enactment of this new policy is not just a Loss of 75% or more of the profits but the complete destruction of the business.

55. **Injunctive** relief will not cause injury to the state, the MDHHS or the general public. Injunctive relief will only allow continuance of the current/former policy which has been in effect since the program inception, allowing the agency and owner to avoid the perils of irreparable harm, until the court can render judgement on the issues.

56. The affiant and plaintiff is very **likely to prevail on the merits** once the issues have been given consideration by the court.

57. **The Constitutional Litigation Exception In Ex parte Young' the Supreme Court held that an injunction was proper against the institution of suits brought to enforce an unconstitutional state statute.** Although the opinion did not mention section 265 it was stated in a dictum that an injunction would not be allowed to stay state proceedings if commenced before the federal action.

- **Ex parte Young, 209 U.S. 123** , and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a

challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." Id., at 243-244.

- These principles, made clear in the Fenner case, have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions. See, e. g., Spielman Motor [401 U.S. 37, 46]   Sales Co. v. Dodge, 295 U.S. 89 (1935); Beal v. Missouri Pac. R. Co., 312 U.S. 45 (1941); Watson v. Buck, 313 U.S. 387 (1941); Williams v. Miller, 317 U.S. 599 (1942); Douglas v. City of Jeannette, 319 U.S. 157 (1943).

58. In all of these cases the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction.

59. Plaintiff reaffirms the MSA Bulletin #18-09 seeking to force my agency and all agencies to covert contractors to employees will cause irreparable harm and injury due to the excessive financial liability which will cause a massive decrease in the plaintiff's gross revenues leaving plaintiff insolvent.

60. Plaintiff reaffirms that he has already suffered irreparable harm as a result of MDHHS and its agent's freezing agency rates pursuant to **(Exhibit-B)** MSA Bulletin #17-32 seeking to refusing to honor **(EXHIBIT-C)** MSA Bulletin #09-59 and pay the established rate for services under the Michigan Home Help Agency plan of 170% to. 200% of minimum wage rate that was established in 2008.

## COUNT X VIOLATION OF EQUAL PROTECTION OF THE LAWS

61. Plaintiff affirms that the MDHHS and its agents have implemented their Policy guidelines listed in **MSA Bulletin # 18-09** seeks to Create new and additional requirements applicable only to Home Help Care Agencies, violates the Agencies equal protection rights of the Fourteenth Amendment.

62. **The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws,"** which is essentially a direction that all persons similarly situated should be treated alike.

- Plyler v. Doe, 457 U.S. 202, 216 (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. Schweiker v. Wilson, 450 U.S. 221, 230 (1981); United States Railroad Retirement Board v. Fritz, 449 U.S. 166,

18

174-175 (1980); Vance v. Bradley, 440 U.S. 93, 97 (1979); New Orleans v. Dukes, 427 U.S. 297, 303 (1976). When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, United States Railroad Retirement Board v. Fritz, supra, at 174; New Orleans v. Dukes, supra, at 303, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes. -- City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-40 (U.S. 1985). Equal Protection Clause -- City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 442 (U.S. 1985)          .

## COUNT XI VIOLATION OF EQUAL RIGHTS

63. Plaintiff affirms and alleges MDHHS and its agents are implementing this policy guidelines listed in **MSA Bulletin # 18-09 and MSA Bulletin # 17-37** denying plaintiff's (1).equal rights, (2).make and enforce contracts, and (3). protection against impairment.

### 64. Title 42 sec 1981

### § 1981. Equal rights under the law

(1) Statement of equal rights

b. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.          .

### "Make and enforce contracts" defined

c. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

### Protection against impairment

d. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

65. Plaintiff affirms that the unauthorized and unlawful exercise of powers by the MDHHS and its agents in implementation and enforcement of their new polices contrary to the controlling laws are erroneous, malicious, abusive, unlawful, irresponsible, reckless, an

abuse of public trust, injurious to the public at large and causing plaintiff to suffer irreparable harm.

66. Plaintiff affirms that failure of MDHHS and its agents to adhere to, and comply with, the Law, rules and procedural policy in implementation and enforcement of their new polices when affecting Plaintiff's private interest as contracting party constitutes a willful intent of erroneous deprivation causing plaintiff to suffer irreparable harm.

- For a defendant's actions to be motivated by bad faith, willfulness, or fault, his conduct "must display either intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." Mulbah v. Detroit Bd. of Educ., 261 F.3d 586, 591 (6th Cir. 2001)

67. Plaintiff affirms that failure of MDHHS and its agents to adhere to, and comply with, the Law, rules and procedural policy in implementation and enforcement of their unauthorized and unlawful new polices when affecting Plaintiff's private interest as contracting party constitutes a structural error on the record causing plaintiff to suffer irreparable harm.

## STRUCTURAL ERROR

- A structural error is defined as "an error that permeate[s] the entire conduct of the trial from beginning to end or affect[s] the framework within which the trial proceeds." Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury, 2009 U.S. Dist. LEXIS 103373 (D. Or. Nov. 5, 2009)

68. Plaintiff affirms that failure of MDHHS and its agents in implementation and enforcement of their unauthorized and unlawful new policies affecting Plaintiff's private interest as contracting party contrary to the law constitutes a plain error causing plaintiff to suffer irreparable harm.

## Plain Error

- Plain error is an error or defect that affects the defendant's substantial rights, even though the parties did not bring this error or defect to the judge's attention during trial. Of course, some plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court in the form of timely objections. Plain errors can form a basis for a successful appeal of a criminal conviction as well as for overturning a wide variety of court verdicts and rulings. ......Plain error is error which is so fundamental that, absent the error, the jury would have reached a different result. State v. Odom, 307 N.C. 655 (1985).

69. Plaintiff affirms that he is being violated by unlawful state action by Defendants implementation and enforcement of their unauthorized and unlawful new polices is a cause for negligent action.

- An essential element in a negligence cause of action is the existence of a legal duty owed by the defendant to the plaintiff. Without such a duty, there can be no actionable negligence. Rodgers v. Department of Parole & Comm. Corrections, 320 S.C.253, 464 S.E.2d 330 (1995)

70. Plaintiff affirms that failure of MDHHS and its agents to adhere to, and comply with, the procedural rules and laws in implementation and enforcement of their unauthorized and unlawful new policies affecting Plaintiff's private interest as contracting party constitutes an erroneous act causing plaintiff to suffer irreparable harm.

- Erroneous. Involving error; deviating from the law.   Thompson v. Doty, 72 Ind. 338; U.S. v. Sakharam Ganesh Pandit,C.C.A.Cal, 15 F.2 285, 286. "False" as a constituent of a fraud action may at times be said to be synonymous with "erroneous." Abel v, Paterno, 153 Misc. 248, 274 N.Y.S. 749.   Black's Law Dictionary revised fourth edition p.637

71. Plaintiff affirms that failure of MDHHS and its agents to adhere to, and comply with, their own procedural rules and laws in the implementation and enforcement of their unauthorized and unlawful new policies affecting Plaintiff's private interest as contracting party constitutes an intentional misapplication of a legal process causing plaintiff to suffer irreparable harm.

- The willful misuse or misapplication of process to accomplish a purpose not warranted or commanded by the writ; the malicious perversion of a regularly issued process, whereby a result not lawfully or properly obtained on a writ is secured. King v. Yarbray, 136 Ga. 212 (1), 71 S.E. 131.

72. Plaintiff affirms that failure of MDHHS and its agents to adhere to, and comply with their own procedural rules and laws in implementation and enforcement of their unauthorized and unlawful new policies affecting Plaintiff's private interest as contracting party constitutes a malicious abuse of legal process causing plaintiff to suffer irreparable harm.

- Malicious Abuse of Legal Process: Willfully misapplying court process to obtain object not intended by law. Atlanta Finance Co. v. Cain, 42 Ga. App. 819, 157 S.E. 337. Black's Law Dictionary revised fourth edition p.1110

- Gleason v Michigan Dep't of Transportation, 256 Mich App 1, 3; 662 NW2d 822 (2003). The elements of an abuse of process claim are: "(1) an ulterior purpose, and (2) an act in

the use of process that is improper in the regular prosecution of the proceeding. "Bonner v Chicago Title Ins Co, 194 Mich App 462, 472; 487 NW2d 807 (1992).

**WHEREFORE;**

Plaintiff prays this Honorable Court enter an Order granting the following:

A. Issue Temporary Restraining Order prohibiting enforcement of MSA Bulletins •17-32 and 18-09.

B. Enter a Show Cause Order requiring Defendant to appear and show cause why a Preliminary Injunction should not be entered enjoining enforcement of MSA Bulletin 17;.32 and MSA Bulletin 18-09,

C. Issue a Declaratory Judgment ordering that:

1) MSA Bulletin 17-32 is unenforceable, as written, as it is in conflict with the controlling federal statutes.

2) MSA Bulletin 18-09 is unenforceable, as written, as it is in conflict with the controlling federal statues.

3) Defendant is preempted from enforcing the penalty provisions in the Bulletins 17- 31 and 18-9

4) The applicable agency rate for services under the Michigan Home Help Agency plan is 170% to 200% of individual rate.

5) Home Help Care Agencies may continue to contract with care providers.

6) Home Help Care Agencies may utilize the Personal Choice and Acknowledgment of Provider Selection.

D. Compel the Department to' pay the Agencies at the established rate of 170 to. 200% of minimum wage.

E. Issue a Preliminary Injunction prohibiting Defendant from enforcing MSA Bulletins

17-32 and 18-09.

F. Issue a Permanent Injunction prohibiting Defendant from enforcing MSA Bulletins 17-

32 and 18-09.

G. Grant such further relief as this court deems fair, just, and equitable.

22

Respectfully submitted,

All Rights Reserved "Without Prejudice"

Subscribed and sworn to by _Mario Miles_ before me on

the _22nd_ day of _July_ , _2018_ .

Signature _____

Printed name _Porche U. Prater_ _____

Notary public, State of Michigan, County of Wayne

My commission expires _January 24, 2022_ ___

**PORCHE U PRATER**
**NOTARY PUBLIC STATE OF MICHIGAN**
**OAKLAND COUNTY**
**ACTING IN:**
**MY COMMISSION EXPIRES JAN. 24, 2022**

# EXHIBIT A

## BULLETIN # MSA 18-09



| | |
|---|---|
| **Bulletin Number:** | MSA 18-09 |
| **Distribution:** | Home Help Agency Providers |
| **Issued:** | May 1, 2018 |
| **Subject:** | Home Help Agency Provider Standards |
| **Effective:** | July 1, 2018 |
| **Programs Affected:** | Medicaid, Healthy Michigan Plan |

I. **Background**

This bulletin updates the Home Help agency provider standards described in bulletin MSA 15-13, issued on May 1, 2015. The Home Help program is administered by the Michigan Department of Health and Human Services (MDHHS) and provides personal care services to individuals who need hands-on assistance with Activities of Daily Living (ADLs) and assistance with Instrumental Activities of Daily Living (IADLs). MDHHS is responsible for approving Home Help agency providers for participation in the program. This policy includes a glossary to define roles, requires direct employment of all Home Help agency caregivers and agency employees, and describes record retention requirements for Home Help agencies.

II. **Home Help Description of Terms**

| Adult Services Worker (ASW) | This person works for MDHHS and provides case management services for the Home Help program. |
|---|---|
| Agency Caregiver | The direct care worker. This caregiver provides personal care services to an MDHHS Home Help client. |
| Agency Employee | An employee of a Home Help agency who has access to information regarding a Home Help client for the purposes of billing, answering phone calls or assisting with setting up services for a MDHHS Home Help client. |
| Agency Owner(s) | Possesses 5% or greater direct or indirect ownership interest of the agency and/or person with control interest. |
| Agency Provider | • A current Medicare certified home health agency with Medicare certification and a Federal Taxpayer Identification Number (TIN); |

| | |
|---|---|
| | • An approved agency with a TIN that directly employs all (but not less than two) agency caregivers, not including the owner, who are providing services through the Home Help program and regularly receiving a monthly paycheck; **OR**<br>• A Community Mental Health Services Program (CMHSP) that works with clients who use arrangements that support self-determination. |
| Agency Representative/ Resident Agent | An individual who is authorized to act on behalf of the agency owner. |
| Board of Directors | A group of individuals elected or selected to act as representatives of the shareholders to establish corporate management-related policies and to make decisions on major company issues. |
| Client | A Medicaid beneficiary who is receiving services through the MDHHS Home Help program. |
| Managing Employee | A general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operation of the institution, organization, or agency either under contract or through some other arrangement, whether or not the individual is a W-2 employee. |

III. **Provider Qualifications**

A. **Agency Provider Definition**

In order to qualify for reimbursement at the agency rate, the agency provider must meet one of the following criteria and be approved by the MDHHS Home Help Unit:

- A current Medicare certified home health agency with Medicare certification and a Federal TIN; **OR**
- An agency with a Federal TIN that directly employs all (but not less than two) agency caregivers, not including the owner, who are providing services through the Home Help program and are regularly receiving paychecks from the agency each month; **OR**
- A CMHSP that works with clients who use arrangements that support self-determination.

IV.    **Provider Operating Standards**

    A. **Employee Identification**

        Agency caregivers and agency employees who have direct contact with clients must carry and present a State or Home Help agency issued photo identification whenever they enter a client's home. In addition, agency caregivers are required to show their identification whenever requested by the MDHHS Adult Services Worker (ASW) or other MDHHS staff working in collaboration with the Home Help program.

    B. **Criminal History Screening**

        Agency owners, agency caregivers, and agency employees who have access to the MDHHS Home Help client's home or personal information are subject to criminal history screenings and program exclusions consistent with the provisions outlined in current Home Help policy. Home Help agency caregivers and agency employees must also associate in CHAMPS to the agency where they are employed. The date of this association should not be earlier than the date the criminal history check was completed to protect client safety.

        Agency caregivers and agency employees who do not meet the criminal history criteria may continue to work for the agency but cannot provide Home Help services funded by MDHHS through the Home Help program. Agency caregivers and agency employees with a criminal history will not have the option of continuing services by having a Home Help client complete the Personal Choice and Acknowledgement of Provider Selection Form.

    C. **Required Contact Between Agency Representatives/Resident Agents and ASW**

        The ASW is required to meet with Home Help clients every six months to complete a review of client needs. Part of this review process involves a conversation between the agency caregiver who is providing the direct hands on care to a Home Help client and the ASW. This contact will be initiated by the ASW, but may require follow-up by the agency caregiver if the initial attempt is unsuccessful. At least once per year, this contact must be a face-to-face contact between the ASW and the agency caregiver.

        NOTE: If the agency is just beginning services with a client, the initial contact may be with either the agency owner and/or the agency caregiver. Once services have begun, subsequent contact must be with the agency caregiver who is providing the direct hands-on care to the Home Help client. Failure to cooperate with these requirements can result in suspension of payment to the agency.

MSA 18-09
Page 4 of 10

### D. Recruitment and Marketing

Recruitment of caregivers or clients is not allowed in MDHHS offices or anywhere on MDHHS premises. Home Help agencies may not use materials developed by MDHHS in advertising, marketing, or recruitment in a manner that misrepresents the Home Help agency's relationship with the State or the Home Help program. The use of the MDHHS logo on agency documents is prohibited. Agencies are not allowed to recruit or direct their advertising to Medicaid beneficiaries and/or their active individual caretakers who are already receiving Home Help services through MDHHS. An agency caregiver may not provide services to a Home Help client who they were assisting as an individual provider for 90 days after commencement of employment with the agency or for 90 days after termination of services as the client's individual provider, whichever comes later. Example: Mrs. Smith is a Home Help client. She uses her adult daughter, Becky, as her individual home help provider. Becky recently had contact with a Home Help agency and would like to work for the agency. Her start date is May 1st. Becky may work for the agency and care for other clients as of May 1st. She may also continue as an individual provider for her mother, Mrs. Smith. If the agency wants to take Mrs. Smith as a client, they can assign a different provider for her care. Becky will not be able to care for Mrs. Smith through the agency until there is at least a 90-day break in service.

Agencies may conduct standard employee recruitment (e.g., posting openings) and general advertising outside of the MDHHS office and off MDHHS premises.

### E. Non-Competition Conditions

The agency provider will neither have, nor enforce, any agreements or requirements that prohibit an agency caregiver or agency employee from working with a different Home Help client or for another Home Help agency during or after ending employment, regardless of when the agreement was signed.

### F. Payment for Services

Home Help agencies must directly employ all agency caregivers and agency employees who work with Home Help clients. Medicaid will not reimburse an agency for services that were provided by a contracted caregiver. Agency caregivers and agency employees may not subcontract services to someone not directly employed by the agency. All agency caregivers and agency employees must be enrolled in CHAMPS and associated to the Home Help agency prior to providing Home Help services so that a criminal history check is completed.

Agencies will accept the authorized Home Help payment as payment in full for Home Help services rendered. Clients shall not be required or solicited to supplement Home Help payments for the same services authorized by MDHHS.

### G. Record Retention

Agencies are required to maintain supporting documentation verifying that services billed to MDHHS were provided to the client. At a minimum, this includes verification of

days and times worked, tasks completed, and names of clients that the provider worked with each day. The agency provider is also required to keep a copy of the approved time and task from MDHHS for each client. Records need to be kept for seven years from the date of service.

Providers must, upon request from authorized agents of the state or federal government, make available for examination and photocopying all medical records, quality assurance documents, financial records, administrative records, and other documents and records that must be maintained. Failure to make requested records available for examination and duplication and/or extraction through the method determined by authorized agents of the state or federal government may result in the provider's suspension and/or termination from Medicaid. Failure to produce supporting documentation for claims may also result in recoupment of Home Help payments made to the agency.

**V.   Agency Enrollment and Disenrollment**

**A. Agency Enrollment**

1. Approval Process for New Agencies

   Provider agencies must:

   a. Have a Federal Employer Identification Number (EIN).

   b. Submit the following documents to the MDHHS Home Help Unit:

   - A letter of intent signed by the agency owner(s) specifying what services the agency will be providing. Additional items to be included in the letter are:
     - Contact information for the Home Help agency owner and managing employee. If the owner is the managing employee, note this in the letter.
     - If the agency is managed by a separate individual their contact information needs to be included.
       NOTE: Contact information includes e-mail, phone number and agency owner home address.
     - The letter needs to specify that these individuals will ensure that the agency and the agency's caregivers and employees have read all current MDHHS Home Help policies and procedures and will provide services in compliance with those requirements.

   - Copies of the Internal Revenue Service (IRS) form W-4 Employee's Withholding Allowance Certificate for all agency caregivers and agency employees. This verifies that all caregivers and employees involved in the Home Help program are directly employed by the agency.

Consultation Summary-Project #1727-HH                    May 16, 2018, 11:05 am

MSA 18-09
Page 6 of 10

- Please register your agency with the Department of Licensing and Regulatory Affairs or your County Clerk's Office. Once this step is completed you will need to send in your articles of organization or similar documents. NOTE: Any documents other than articles of organization must be in a format approved by the Home Help Unit.

- An agency that has been operating, but not with the Michigan Medicaid Home Help program, must provide additional documents listed below:

  o A current copy of the Employer's Quarterly Federal Tax Return (IRS Form-941) or relevant filing/statement demonstrating current compliance with the Federal Insurance Contributions Act (FICA) tax;
  o A current copy of form UIA 1028 Employer's Quarterly Wage/Tax Report or a similar form demonstrating the agency's current compliance of state unemployment insurance filings and payment;
  o A list of current caregivers and employees who work for the agency and will provide services for Home Help clients. The list should include caregiver/ employee name, date of birth and the Community Health Automated Medicaid Processing System (CHAMPS) provider ID;
  o A copy of W4s for all current Home Help agency caregivers and employees; AND
  o A copy of IRS form W-9 Request for Taxpayer Identification Number and Certification for the agency.

- A current Medicare certified home health agency is only required to provide a letter of intent and a copy of the current Medicare certification.

Submit all required documentation described above to:

Email to: MDHHS-MSA-HHProviderReporting@Michigan.gov

Fax to: 517-335-7959, or

Postal mail to:
MDHHS Home Help Unit
Capitol Commons Center, 6th Floor
400 S. Pine St.
Lansing, MI  48913

NOTE: Agencies are encouraged to scan and e-mail documents to the e-mail listed above with the subject line of "Agency Application". This enables staff to quickly identify these documents and respond that the documents have been received. Fax and postal mail are acceptable, however, the reply that documents have been received will not be available.

c.  Agencies must register their vendor account with the State of Michigan by visiting the SIGMA Vendor Self Service website at www.michigan.gov/SIGMAVSS. Refer to the SOM VSS User Guide for New Vendors reference document for further instructions. Agency providers should keep a record of the new Vendor Customer ID, download and print the substitute W-9 form for agency records, and submit a copy of this form to MDHHS by one of the methods stated above.

d.  Home Help agencies involved in the Home Help program must register in CHAMPS and have a criminal history screening done prior to delivering services or working with MDHHS Home Help clients.  Instructions on how to complete this process are located on the MDHHS website at www.michigan.gov/homehelp or by calling Provider Support at 1-800-979-4662.  Agencies must revalidate their CHAMPS registration information a minimum of once every five years, or more often if requested by MDHHS.  If the agency fails to submit the CHAMPS application within 60 days of the application start date, the agency application will be denied.

NOTE: Upon CHAMPS approval from MDHHS, all agency caregivers and agency employees working with the Home Help program must also register in CHAMPS, pass a criminal history screening and be associated to the agency provider using the seven-digit provider ID number assigned to the Home Help Agency.

2.  Agency Enrollment Approval or Denial

The agency provider will be notified in writing of its approval, denial or the need for additional information within 30 calendar days of all required documents being received.  Application directions can be found online at: www.michigan.gov/homehelp.

An agency provider shall be denied enrollment if any of the agency owners, agency representatives/resident agents, or managing employees had direct or indirect ownership interest and/or control interest of a Home Help agency that was suspended or terminated from the Michigan Medicaid program within the preceding five years.

3.  Additional Verification Needed for New Agencies

Within 120 days of agency approval, the agency must submit the following documentation to the MDHHS Home Help Unit:

- A letter identifying the agency owner(s) and administrator, along with their contact information (to include address, phone number and e-mail information).
- A copy of the most recent IRS Form-941 demonstrating that the FICA tax is paid on a quarterly basis.

- A copy of the most recent form UIA-1028 or a similar form demonstrating the agency's payment of state unemployment insurance.
- Copies of IRS form W-4 for all agency caregivers who are currently providing services to Home Help clients.
- A list of all agency caregivers and agency employees who are currently providing services to Home Help clients, including their first and last name, date of birth, and their CHAMPS provider ID. This list should match the providers currently listed in CHAMPS and associated to the Home Help agency.

## B. Reporting

Agencies must report all changes affecting agency provider enrollment by updating agency information in CHAMPS. This includes, but is not limited to, changes in agency ownership, address, contact name, telephone number, email, or an agency caregiver or employee. Failure to notify MDHHS within 10 calendar days of the change may result in the termination of the agency provider's enrollment, a reduction from the agency provider reimbursement rates to individual provider rates, or the denial of claims for services provided.

The MDHHS Home Help Unit will audit employment documents for a sample of agencies each year. An agency selected for audit will be required to provide current copies of the employment documents cited above under the Agency Enrollment section along with supporting verifications of services related to a specific payment. Agencies must submit the requested information within 30 calendar days to MDHHS. Failure to provide documents by the due date may result in a reduction of payment rate. Failure to provide the required documents within 60 calendar days will result in the agency being removed from the Approved Home Help Agency list for a minimum of 30 calendar days or until compliance, whichever is longer.

Other authorized areas within MDHHS may also request documents or other records needed for the Home Help program. Agencies must follow the timelines specified in those requests.

## C. Approved Disenrollment

When an agency is disenrolled, any authorizations for Home Help payments are terminated in the state payment system. Notice is sent to the agency provider and the local MDHHS office within 10 calendar days of the MDHHS determination of disenrollment. MDHHS may disenroll an agency for any of the following reasons:

- An agency may be disenrolled if the agency or any of its caregivers or employees are found guilty of Medicaid fraud or client abuse, exploitation or neglect.
- An agency may be disenrolled for falsifying information in its application documents, provider agreement, quarterly reporting, service verification or billing.
- An agency may be disenrolled if the agency owner(s), agency representative/resident agent, or a member of the Board of Directors has a mandatory or permissive criminal conviction as outlined in bulletin MSA 14-31.

- An agency may be disenrolled for failing to report changes or update CHAMPS within 10 calendar days of the change.
- An agency may be disenrolled if it fails to meet any of the requirements in this policy.

An agency may be suspended if it is being investigated for fraud, abuse, exploitation or neglect, pending the outcome of the investigation.

### D. Approved Agency List

MDHHS maintains a list of agencies approved to provide Home Help services to MDHHS clients. Agencies must be on the Approved Agency List to be eligible for the agency rate. These lists are updated monthly and sent to local offices to use as a resource when clients are looking for providers. MDHHS may remove an agency from the Approved Agency List for the following reasons:

- An agency has not provided Home Help services within the last six months.
- An agency fails to meet any of the requirements in this policy.
- An agency fails to meet any of the requirements in this policy not already listed under the Disenrollment Section above.

Agencies removed from the Approved Agency List may still be coded as an agency in CHAMPS and will be eligible to provide services at the individual rate for Home Help. Agencies that would like to be reinstated as an approved Home Help agency provider should send an e-mail to MDHHS-MSA-HHProviderReporting@michigan.gov to request information on how to become reinstated.

### E. Participation as an Agency Provider

Participation in the Home Help program as an Agency Provider is subject to denial, suspension, or termination in accordance with MCL 400.111e.

### F. Appeals

Agency providers and applicants have the right to appeal any adverse action taken by MDHHS. The appeal process is subject to the Social Welfare Act, PA 280 of 1939; MCL 400.01 et seq., Chapters 4 and 6 of the Administrative Procedures Act of 1969; MCL 24.271 to 24.287 and MCL 24.301 to 24.306, and the Michigan Administrative Code regarding Medical Services Administration (MSA) Provider Hearings (R 400.3401 - 400.3425 and R 792.10904 – 792.10906).

1. Existing Agencies

MDHHS will inform an agency provider of disenrollment through an adverse action notice (also known as a negative action notice). The agency may appeal within 30 calendar days of the notice to the Michigan Administrative Hearing System (MAHS). Existing agency providers may continue to provide services during the appeal period if the agency provider accepts responsibility for the repayment of funds should the

MDHHS decision be upheld. The agency provider may not accept new Medicaid Home Help clients during the appeal period. During this time, the Home Help client continues to have the right to terminate the agency provider at any time and without cause.

**NOTE:** The process described above may not reflect actions taken on behalf of MDHHS by the MDHHS Office of Inspector General (OIG). An agency provider suspended from the Home Help program by OIG cannot operate during the suspension and has 15 calendar days to appeal the OIG decision.

2. New Agency Applicants

MDHHS will inform new agency provider applicants of ineligibility factors identified through screening and/or evaluation. The agency provider may appeal within 30 calendar days of notification of being denied or of losing agency status to MAHS. New agencies denied enrollment during the screening application process are not eligible to receive MDHHS payment for Home Help services during the appeal period.

**Manual Maintenance**

Retain this bulletin until the information is incorporated into the Michigan Medicaid Provider Manual.

**Questions**

Any questions regarding this bulletin should be directed to Provider Inquiry, Department of Health and Human Services, P.O. Box 30731, Lansing, Michigan 48909-8231, or e-mailed to ProviderSupport@michigan.gov. When you submit an e-mail, be sure to include your name, affiliation, and phone number so you may be contacted if necessary. Providers may phone toll-free 1-800-979-4662.

Approved

Kathy Stiffler, Acting Director
Medical Services Administration

# EXHIBIT B

## BULLETIN # MSA 17-32





Medical Services Administration

# BULLETIN

| Change to bulletin is highlighted. |
| Change made on 9-4-2017 |

**Note that MDHHS has updated our MSA provider bulletins with a fresh, new look.**

| | |
|---|---|
| **Bulletin Number:** | MSA 17-32 |
| **Distribution:** | Home Help Agency Providers |
| **Issued:** | September 29, 2017 |
| **Subject:** | Home Help Agency Provider Reimbursement Rates |
| **Effective:** | November 1, 2017 |
| **Programs Affected:** | Medicaid, Healthy Michigan Plan |

The Home Help program is administered by the Michigan Department of Health and Human Services (MDHHS), and provides personal care services to individuals who need hands-on assistance with Activities of Daily Living (ADLs) and assistance with Instrumental Activities of Daily Living (IADLs).  The purpose of this bulletin is to provide notice of changes and updates for the Medicaid Home Help program.

## Home Help Agency Provider Reimbursement Rates

This policy replaces and supersedes all policies, rules, or other MDHHS publications related to agency rates or methods for determining Home Help rates for agency providers.  As of November 1, 2017, the agency rates published on January 1, 2017 will remain in effect until further notice.  Home Help provider rates can be found at www.michigan.gov/HomeHelp under "Additional Home Help Resources."  Future agency rate changes will be based upon legislative appropriations and the necessity to maintain rates that support access to qualified providers.

**Manual Maintenance**

Retain this bulletin until the information is incorporated into the Michigan Medicaid Provider Manual.

**Questions**

Any questions regarding this bulletin should be directed to Provider Inquiry, Department of Health and Human Services, P.O. Box 30731, Lansing, Michigan 48909-8231, or e-mail at ProviderSupport@michigan.gov.  When you submit an e-mail, be sure to include your name, affiliation, and phone number so you may be contacted if necessary. Providers may phone toll-free 1-800-979-4662.

**Approved**

Chris Priest, Director
Medical Services Administration

# EXHIBIT C

## BULLETIN # MSA 09-59

## MXIMUM AGENCY RATE FOR COUNTIES



# Bulletin

**Michigan Department of Community Health**

| | |
|---|---|
| **Bulletin:** | MSA 09-59 |
| **Distribution:** | Home Help Providers |
| **Issued:** | December 30, 2009 |
| **Subject:** | Home Help Provider Wage Increase |
| **Effective:** | As Stated |
| **Programs Affected:** | Medicaid |

Pursuant to Public Act 131 of 2009, all providers of Medicaid adult home help services will receive an hourly wage increase.

Individual home help providers will receive an hourly wage increase of 50 cents per hour.

Home help provider agencies will receive a rate increase predicated on the following:

- County agency rates will be increased by 5% or less, unless the current agency rate is equal to or greater than 170% of the county's new individual provider rate. Any agency rate that is equal to or greater than 170% of the county's new individual provider rate shall be frozen until such time as the agency rate is equal to or less than 170% of the county's individual provider rate.

- The minimum agency rate for any county will be 170% of the lowest county individual provider rate in the state.

- The maximum agency rate for any county will be 200% of the lowest county individual rate in the state at the time of policy implementation. Any county's agency rate that is currently above that amount will be frozen until such time as an increase is necessary to achieve a rate that is 170% of the county's individual provider rate.

- All agency rates will be rounded to the nearest quarter (25 cents).

- Agency rates are not transferable from county to county.

There will be no exceptions granted for deviation from the respective rates established from implementation of this policy.

Home help providers that operate in counties where the Department of Human Services (DHS) has established dual-county operations will receive the higher of the two established county rates. This will be applicable to individual and agency providers. The attached sheet provides payment rates for home help providers. The higher payment rate was used for counties where dual-county operations are indicated.

The effective date of this rate change is retroactive to November 1, 2009.

Case 2:18-cv-12295-BAF-SDD   ECF No. 1   filed 07/23/18   PageID.40   Page 40 of 66

## INDIVIDUAL AND AGENCY COUNTY RATES

The following table lists the individual and agency provider rates for each county effective 01/01/2017. Historical individual county rates are located in ASCAP on the provider assignment screen.

| County Code | County Name | Individual Provider Rate | Agency Provider Rate |
|---|---|---|---|
| 1 | Alcona | $8.90 | $14.50 |
| 2 | Alger | $8.90 | $14.25 |
| 3 | Allegan | $8.90 | $13.50 |
| 4 | Alpena | $8.90 | $13.50 |
| 5 | Antrim | $8.90 | $14.75 |
| 6 | Arenac | $8.90 | $13.50 |
| 7 | Baraga | $8.90 | $15.00 |
| 8 | Barry | $8.90 | $14.50 |
| 9 | Bay | $8.90 | $13.50 |
| 10 | Benzie | $11.00 | $14.25 |
| 11 | Berrien | $8.90 | $13.50 |
| 12 | Branch | $8.90 | $14.50 |
| 13 | Calhoun | $8.90 | $14.50 |
| 14 | Cass | $8.90 | $14.50 |
| 15 | Charlevoix | $8.90 | $13.50 |

| ASM 138 | 2 of 5 | COUNTY RATES | ASB 2017-001 |
| | | | 1-1-2017 |

| County Code | County Name | Individual Provider Rate | Agency Provider Rate |
|---|---|---|---|
| 16 | Cheboygan | $8.90 | $14.50 |
| 17 | Chippewa | $9.00 | $14.50 |
| 18 | Clare | $8.90 | $13.50 |
| 19 | Clinton | $8.90 | $14.50 |
| 20 | Crawford | $8.90 | $15.00 |
| 21 | Delta | $8.90 | $13.50 |
| 22 | Dickinson | $8.90 | $14.50 |
| 23 | Eaton | $8.90 | $14.50 |
| 24 | Emmet | $8.90 | $13.50 |
| 25 | Genesee | $8.90 | $13.50 |
| 26 | Gladwin | $8.90 | $13.50 |
| 27 | Gogebic | $8.90 | $15.00 |
| 28 | Grand Traverse | $11.00 | $15.00 |
| 29 | Gratiot | $8.90 | $14.50 |
| 30 | Hillsdale | $8.90 | $14.50 |
| 31 | Houghton | $8.90 | $15.00 |
| 32 | Huron | $8.90 | $13.50 |
| 33 | Ingham | $8.90 | $13.75 |

| ASM 138 | 3 of 5 | COUNTY RATES | ASB 2017-001 |
| | | | 1-1-2017 |

| County Code | County Name | Individual Provider Rate | Agency Provider Rate |
|---|---|---|---|
| 34 | Ionia | $8.90 | $13.50 |
| 35 | Iosco | $8.90 | $14.50 |
| 36 | Iron | $8.90 | $14.50 |
| 37 | Isabella | $8.90 | $13.50 |
| 38 | Jackson | $8.90 | $14.50 |
| 39 | Kalamazoo | $8.90 | $14.50 |
| 40 | Kalkaska | $8.90 | $14.75 |
| 41 | Kent | $8.90 | $15.50 |
| 42 | Keweenaw | $8.90 | $15.00 |
| 43 | Lake | $8.90 | $13.50 |
| 44 | Lapeer | $8.90 | $14.00 |
| 45 | Leelanau | $11.00 | $15.00 |
| 46 | Lenawee | $9.50 | $14.25 |
| 47 | Livingston | $9.00 | $13.50 |
| 48 | Luce | $9.00 | $14.50 |
| 49 | Mackinac | $8.90 | $14.50 |
| 50 | Macomb | $8.90 | $14.25 |
| 51 | Manistee | $11.00 | $14.25 |

| ASM 138 | 4 of 5 | COUNTY RATES | ASB 2017-001 |
| | | | 1-1-2017 |

| County Code | County Name | Individual Provider Rate | Agency Provider Rate |
|---|---|---|---|
| 52 | Marquette | $8.90 | $14.25 |
| 53 | Mason | $8.90 | $15.00 |
| 54 | Mecosta | $8.90 | $13.50 |
| 55 | Menominee | $8.90 | $13.50 |
| 56 | Midland | $8.90 | $13.50 |
| 57 | Missaukee | $8.90 | $13.50 |
| 58 | Monroe | $8.90 | $14.50 |
| 59 | Montcalm | $8.90 | $13.50 |
| 60 | Montmorency | $8.90 | $14.00 |
| 61 | Muskegon | $8.90 | $14.50 |
| 62 | Newago | $8.90 | $13.50 |
| 63 | Oakland | $8.90 | $13.50 |
| 64 | Oceana | $8.90 | $15.00 |
| 65 | Ogemaw | $8.90 | $14.50 |
| 66 | Ontonagon | $8.90 | $15.00 |
| 67 | Osceola | $8.90 | $13.50 |
| 68 | Oscoda | $8.90 | $14.00 |
| 69 | Otsego | $8.90 | $15.00 |

| ASM 138 | 5 of 5 | COUNTY RATES | ASB 2017-001 |
|---|---|---|---|
| | | | 1-1-2017 |

| County Code | County Name | Individual Provider Rate | Agency Provider Rate |
|---|---|---|---|
| 70 | Ottawa | $8.90 | $13.50 |
| 71 | Presque Isle | $8.90 | $13.50 |
| 72 | Roscommon | $8.90 | $14.50 |
| 73 | Saginaw | $8.90 | $13.50 |
| 74 | St. Clair | $8.90 | $14.50 |
| 75 | St. Joseph | $8.90 | $14.50 |
| 76 | Sanilac | $8.90 | $14.00 |
| 77 | Schoolcraft | $8.90 | $14.25 |
| 78 | Shiawassee | $9.00 | $13.50 |
| 79 | Tuscola | $8.90 | $13.50 |
| 80 | Van Buren | $8.90 | $14.50 |
| 81 | Washtenaw | $8.90 | $14.50 |
| 82 | Wayne | $8.90 | $13.50 |
| 83 | Wexford | $8.90 | $13.50 |

# EXHIBIT D

## FINANCIALS PROOF OF INSOLVECY FOR POICY IMEMENTATION AT PAY RATE OF $13.50

## CONTRACTOR   vs   EMPLOYEE CONVERSION

| PROVIDERS | ADDRESS | RATE | HOURS | TOTAL PAY | TOTAL PAY (5 MONTH) | FUTA | Social Security | Medicare |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 0.006 | $0.06 | |
| Amene, Rosemary | | $10.00 | 55.10 | $551.00 | $2,755.00 | $16.53 | $170.81 | |
| Beasley, Bobby Jean | | $10.00 | 53.94 | $539.40 | $2,697.00 | $16.18 | $167.21 | |
| Brown, Dana | | $10.00 | 24.21 | $242.10 | $1,210.50 | $7.26 | $75.05 | |
| Bumpous, Soneah | | $10.00 | 86.02 | $860.20 | $4,301.00 | $25.81 | $266.66 | |
| Curry, Darlene | | $10.00 | 50.49 | $504.90 | $2,524.50 | $15.15 | $156.52 | |
| Harper, Philip | | $10.00 | 43.15 | $431.50 | $2,157.50 | $12.95 | $133.77 | |
| Henry, Lakesha | | $10.00 | 44.04 | $440.40 | $2,202.00 | $13.21 | $136.52 | |
| Holland, Debora Willis | | $10.00 | 71.53 | $715.30 | $3,576.50 | $21.46 | $221.74 | |
| Holloway, Shelly Marie | | ADVOCATE | | $80.00 | $400.00 | $2.40 | $24.80 | |
| Mario Miles | | ADVOCATE | | $1,240.00 | $6,200.00 | $42.00 | $384.40 | |
| Jefferies, Dion | | $10.00 | 59.69 | $596.90 | $2,984.50 | $17.91 | $185.04 | |
| Larkins, Jenita | | $10.00 | 39.33 | $393.30 | $1,966.50 | $11.80 | $121.92 | |
| Lomax, Pennie | | $10.00 | 29.00 | $290.00 | $1,450.00 | $8.70 | $89.90 | |
| Merriweather, Danyelle | | $10.00 | 52.96 | $529.60 | $2,648.00 | $15.89 | $164.18 | |
| Moss, Diane | | $10.00 | 90.03 | $900.30 | $4,501.50 | $27.01 | $279.09 | |
| Nelson, Timothy Lewis | | $10.00 | 44.02 | $440.20 | $2,201.00 | $13.21 | $136.46 | |
| Pitts, Michael | | $10.00 | 44.45 | $444.50 | $2,222.50 | $13.34 | $137.80 | |
| Reed, Pamela | | $10.00 | 118.18 | $1,181.80 | $5,909.00 | $35.45 | $366.36 | |
| Viverette, Timika | | $10.00 | 21.90 | $219.00 | $1,095.00 | $6.57 | $67.89 | |
| Walker, Edna | | $10.00 | 37.19 | $371.90 | $1,859.50 | $11.16 | $115.29 | |
| Whitfield, Jami | | $10.00 | 48.22 | $482.20 | $2,411.00 | $14.47 | $149.48 | |
| Williams, Omarria | | $10.00 | 62.07 | $620.70 | $3,103.50 | $18.62 | $192.42 | |
| | | | | | | | | |
| TOTAL | | | | | $60,376.00 | $362.06 | $3,743.31 | |

ADMIN SALARY
LIABILITY INSURANCE/ Workmans comp
AGENCY PAYROLL
EXPENSES
TOTAL EXPENSES
TOTAL TAXES + EXPENSES

Agency Gross @*13.50    $72,027.64

|  |  |
|---|---|
| TAX LIABILITY POST CONVERSION EXPENSES | $0.00 |
| | $60,796.00 |
| | $60,796.00 (Minus admin salary) |

TOTAL PROFIT OR LOSS    $11,231.64

|  |  |
|---|---|
| TAX LIABILITY BEFORE CONVERSION EXPENSES | $6,615.97 |
| | $74,711.00 |
| | $81,326.97 |

# EXHIBIT E

## FINANCIALS PROOF OF STABILITY FOR POICY IMEMENTATION AT MAXIMUM AGENCY PAY RATE OF 70% TO 200%

$15.75

## CONTRACTOR VS EMPLOYEE CONVERSION

| PROVIDERS | ADDRESS | RATE | HOURS | TOTAL PAY | TOTAL PAY (5 MONTH) | FUTA 0.006 | Social Security 50.06 | Medicare 0.0145 | SUTA 0.027 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Amene, Rosemary | | $10.00 | 55.10 | $551.00 | $2,755.00 | $16.53 | $170.81 | $39.95 | $74.39 | $ |
| Beasley, Bobby Jean | | $10.00 | 53.94 | $539.42 | $2,697.00 | $16.18 | $167.21 | $39.11 | $72.82 | $ |
| Brown, Dana | | $10.00 | 24.21 | $242.10 | $1,210.50 | $7.26 | $75.05 | $17.55 | $32.68 | $132 |
| Bumpous, Soneah | | $10.00 | 86.02 | $860.20 | $4,301.00 | $25.81 | $266.66 | $62.36 | $116.13 | $470 |
| Curry, Darlene | | $10.00 | 50.49 | $504.90 | $2,524.50 | $15.15 | $156.52 | $36.61 | $68.16 | $276 |
| Harper, Philip | | $10.00 | 43.15 | $431.50 | $2,157.50 | $12.95 | $133.77 | $31.28 | $58.25 | $236 |
| Henry, Lakesha | | $10.00 | 44.04 | $440.40 | $2,202.00 | $13.21 | $136.52 | $31.93 | $59.45 | $241 |
| Holland, Debora Willis | | $10.00 | 71.53 | $715.30 | $3,576.50 | $21.46 | $221.74 | $51.86 | $96.57 | $391 |
| Holloway, Shelly Marie | | ADVOCATE | | $80.00 | $400.00 | $2.40 | $24.80 | $5.80 | $10.80 | $43.8 |
| Mario Miles | | ADVOCATE | | $1,240.00 | $6,200.00 | $42.00 | $384.40 | $89.90 | $167.40 | $683 |
| Jefferies, Dion | | $10.00 | 59.69 | $596.90 | $2,984.50 | $17.91 | $185.04 | $43.28 | $80.58 | $326 |
| Larkins, Jenita | | $10.00 | 39.33 | $393.30 | $1,966.50 | $11.80 | $121.92 | $28.51 | $53.10 | $215 |
| Lomax, Pennie | | $10.00 | 29.00 | $290.00 | $1,450.00 | $8.70 | $89.90 | $21.03 | $39.15 | $158 |
| Merriweather, Danyelle | | $10.00 | 52.96 | $529.60 | $2,648.00 | $15.89 | $164.18 | $38.40 | $71.50 | $289 |
| Moss, Diane | | $10.00 | 90.03 | $900.30 | $4,501.50 | $27.01 | $279.09 | $65.27 | $121.54 | $492 |
| Nelson, Timothy Lewis | | $10.00 | 44.02 | $440.20 | $2,201.00 | $13.21 | $136.46 | $31.91 | $59.43 | $241 |
| Pitts, Michael | | $10.00 | 44.45 | $444.50 | $2,222.50 | $13.34 | $137.80 | $32.23 | $60.01 | $243 |
| Reed, Pamela | | $10.00 | 118.18 | $1,181.80 | $5,909.00 | $35.45 | $366.36 | $85.68 | $159.54 | $647 |
| Viverette, Timika | | $10.00 | 21.90 | $219.00 | $1,095.00 | $6.57 | $67.89 | $15.88 | $29.57 | $119 |
| Walker, Edna | | $10.00 | 37.19 | $371.90 | $1,859.50 | $11.16 | $115.29 | $26.96 | $50.21 | $203 |
| Whitfield, Jami | | $10.00 | 48.22 | $482.20 | $2,411.00 | $14.47 | $149.48 | $34.96 | $65.10 | $264 |
| Williams, Omarria | | $10.00 | 62.07 | $620.70 | $3,103.50 | $18.62 | $192.42 | $45.00 | $83.79 | $339 |
| **TOTAL** | | | | | $60,376.00 | $367.06 | $3,743.31 | $875.45 | $1,630.15 | $6,615.97 |

ADMIN SALARY $7,915.97

LIABILITY INSURANCE $5,800.00

AGENCY PAYROLL EXPENSES $60,376.00

**TOTAL EXPENSES** $74,711.00

**TAX LIABILITY + EXPENSES** $81,326.97

Agency Gross @15.75 $84,032.24

| | TAX LIABILITY BEFORE CONVERSION | $6,615.97 |
|---|---|---|
| | EXPENSES | $74,711.00 |
| | | $81,326.97 |

TAX LIABILITY POST CONVERSION $0.00

$60,796.00

EXPENSES $60,796.00 (Minus admin salary)

**TOTAL PROFIT OR LOSS** $23,396.24 $2,705.27

# EXHIBIT F

**Minimum Operating Standards
For MI Health Link Program and
MI Health Link HCBS Waiver**

**PAGE, 12 THE RIGHT TO EMPLOYE OR CONTRCT**

Personal care services are available to people living in their own homes or the home of another. Services also may be provided outside the home, for the specific purpose of enabling a beneficiary to be employed.

An individual assessment assists in identification of service needs. People with more basic needs may be served by adults who are capable of communicating with the enrollee and being responsive to his/her needs. People with more complex needs or more specialized problems must be served by individuals who can demonstrate their competence through experience or training. See Complex Care Needs section below

Providers shall be qualified individuals who work independently or contract with or are employed by an agency. The Integrated Care Organization (ICO) will arrange for personal care services to be provided by independent care providers of the enrollee's choice, through employment or the use of a fiscal intermediary, an agency of choice, or a Home Help or other care agency, if the individual meets MDHHS qualification requirements, to provide personal care services. Enrollees who currently receive personal care services from an independent care provider may elect to continue to use that provider or select a new provider so long as that provider meets the State qualifications. Paid family caregivers will be permitted in accordance with Michigan's State Plan for personal care services.

ICOs determine the amount, scope and duration of service provision based on the clinical observations of the enrollee's needs during the face to face Personal Care Assessment. Additional hours of personal care are provided for complex care needs as described further in this guide.

## Assessment and Reassessment Requirements

**Initial Assessment**

During the Level I Assessment, ICO Care Coordinators (or designee who meets the qualifications for an ICO Care Coordinator) must consider if the enrollee may need personal care services. If the ICO Care Coordinator believes the enrollee may be eligible for MI Health Link personal care services, the Care Coordinator will conduct the Personal Care Assessment. The face-to-face, comprehensive assessment is the basis for determining and authorizing the amount, scope and duration and payment of services.

- The Personal Care Assessment will be completed face to face in the enrollee's place of residence.
- Assessment may also include an interview with the individual who will be providing personal care services or any persons the enrollee wishes to include.

# EXHIBIT G

**Contract Between
United States Department of Health and Human Services Centers
for Medicare & Medicaid Services
In Partnership with The State of Michigan
and  <Entity**

**Medicaid"** means benefits under the program of medical assistance established under title XIX of the social security act, 42 USC 1396 to 1396w-5, and administered by the department under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b.

The above mentioned contract states on page  281 point 10 Federal law shall govern this Agreement.

# EXHIBIT H

## 42 U.S. Code § 1396a – 1936w5
## State plans for medical assistance

Authority for disenrollment or exclude

**(p)EXCLUSION POWER OF STATE; EXCLUSION AS PREREQUISITE FOR MEDICAL ASSISTANCE PAYMENTS; "EXCLUDE" DEFINED**

(1)In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under subchapter XVIII under **section 1320a–7, 1320a–7a, or 1395cc(b)(2)** of this title.

Also Right to Contract or employ @

**(C) employs or contracts with any individual** or entity that is excluded from participation under this subchapter under section 1320a–7 or 1320a–7a of this title for the provision of health care, utilization review, medical social work, or administrative services or employs or contracts with any entity for the provision (directly or indirectly) through such an excluded individual or entity of such services

## 42 U.S. Code § 1396a - State plans for medical assistance

### (p)EXCLUSION POWER OF STATE; EXCLUSION AS PREREQUISITE FOR MEDICAL ASSISTANCE PAYMENTS; "EXCLUDE" DEFINED

(1)In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under subchapter XVIII under section 1320a–7, 1320a–7a, or 1395cc(b)(2) of this title.

(2)In order for a State to receive payments for medical assistance under section 1396b(a) of this title, with respect to payments the State makes to a medicaid managed care organization (as defined in section 1396b(m) of this title) or to an entity furnishing services under a waiver approved under section 1396n(b)(1) of this title, the State must provide that it will exclude from participation, as such an organization or entity, any organization or entity that—

(A) could be excluded under section 1320a–7(b)(8) of this title (relating to owners and managing employees who have been convicted of certain crimes or received other sanctions),

(B)has, directly or indirectly, a substantial contractual relationship (as defined by the Secretary) with an individual or entity that is described in section 1320a–7(b)(8)(B) of this title, or

(C)employs or contracts with any individual or entity that is excluded from participation under this subchapter under section 1320a–7 or 1320a–7a of this title for the provision of health care, utilization review, medical social work, or administrative services or employs or contracts with any entity for the provision (directly or indirectly) through such an excluded individual or entity of such services

(3)As used in this subsection, the term "exclude" includes the refusal to enter into or renew a participation agreement or the termination of such an agreement

### (w)MAINTENANCE OF WRITTEN POLICIES AND PROCEDURES RESPECTING ADVANCE DIRECTIVES

(1)For purposes of subsection (a)(57) and sections 1396b(m)(1)(A) and 1396r(c)(2)(E) of this title, the requirement of this subsection is that a provider or organization (as the case may be) maintain written policies and procedures with respect to all adult individuals receiving medical care by or through the provider or organization—

(A)to provide written information to each such individual concerning—

(i)an individual's rights under State law (whether statutory or as recognized by the courts of the State) to make decisions concerning such medical care, including the right to accept or refuse medical or surgical treatment and the right to formulate advance directives (as defined in paragraph (3)), and

(ii)the provider's or organization's written policies respecting the implementation of such rights;

1

(B)to document in the individual's medical record whether or not the individual has executed an advance directive;

(C)not to condition the provision of care or otherwise discriminate against an individual based on whether or not the individual has executed an advance directive;

(D)to ensure compliance with requirements of State law (whether statutory or as recognized by the courts of the State) respecting advance directives; and

(E)to provide (individually or with others) for education for staff and the community on issues concerning advance directives.

Subparagraph (C) shall not be construed as requiring the provision of care which conflicts with an advance directive.

2

# EXHIBIT I

## 42 U.S. Code § 1320a–7 - Exclusion of certain individuals and entities from participation in Medicare and State health care programs

**(a) Mandatory exclusion**
The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b

(f) of this title):

(1) Conviction of program-related crimes Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

(2) Conviction relating to patient abuse Any individual or entity that has been convicted, under Federal or State law, of a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service.

(3) Felony conviction relating to health care fraud

# U.S. Code › Title 42 › Chapter 7 › Subchapter XI › Part A › § 1320a–7

42 U.S. Code § 1320a–7 - Exclusion of certain individuals and entities from participation in Medicare and State health care programs

(a) Mandatory exclusion

The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b (f) of this title):

(1) Conviction of program-related crimes

Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

(2) Conviction relating to patient abuse

Any individual or entity that has been convicted, under Federal or State law, of a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service.

(3) Felony conviction relating to health care fraud

Any individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law, in connection with the delivery of a health care item or service or with respect to any act or omission in a health care program (other than those specifically described in paragraph (1)) operated by or financed in whole or in part by any Federal, State, or local government agency, of a criminal offense consisting of a felony relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct.

(4) Felony conviction relating to controlled substance

Any individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law, of a criminal offense consisting of a felony relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

(b) Permissive exclusion

The Secretary may exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b (f) of this title):

(1) Conviction relating to fraud

Any individual or entity that has been convicted for an offense which occurred after August 21, 1996, under Federal or State law—

(A) of a criminal offense consisting of a misdemeanor relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct—

(i) in connection with the delivery of a health care item or service, or

(ii) with respect to any act or omission in a health care program (other than those specifically described in subsection (a)(1) of this section) operated by or financed in whole or in part by any Federal, State, or local government agency; or

(B) of a criminal offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct with respect to any act or omission in a program (other than a health care program) operated by or financed in whole or in part by any Federal, State, or local government agency.

individual or entity that has been convicted, under Federal or State law, of a criminal offense consisting of a misdemeanor relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

(4) License revocation or suspension

Any individual or entity—

(A) whose license to provide health care has been revoked or suspended by any State licensing authority, or who otherwise lost such a license or the right to apply for or renew such a license, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity, or

(B) who surrendered such a license while a formal disciplinary proceeding was pending before such an authority and the proceeding concerned the individual's or entity's professional competence, professional performance, or financial integrity.

(5) Exclusion or suspension under Federal or State health care program

Any individual or entity which has been suspended or excluded from participation, or otherwise sanctioned, under—

(A) any Federal program, including programs of the Department of Defense or the Department of Veterans Affairs, involving the provision of health care, or

(B) a State health care program,

for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity.

(6) Claims for excessive charges or unnecessary services and failure of certain organizations to furnish medically necessary services

Any individual or entity that the Secretary determines—

(A) has submitted or caused to be submitted bills or requests for payment (where such bills or requests are based on charges or cost) under subchapter XVIII of this chapter or a State health care program containing charges (or, in applicable cases, requests for payment of costs) for items or services furnished substantially in excess of such individual's or entity's usual charges (or, in applicable cases, substantially in excess of such individual's or entity's costs) for such items or services, unless the Secretary finds there is good cause for such bills or requests containing such charges or costs;

(B) has furnished or caused to be furnished items or services to patients (whether or not eligible for benefits under subchapter XVIII of this chapter or under a State health care program) substantially in excess of the needs of such patients or of a quality which fails to meet professionally recognized standards of health care;

(C) is—

(i) a health maintenance organization (as defined in section 1396b (m) of this title) providing items and services under a State plan approved under subchapter XIX of this chapter, or

(ii) an entity furnishing services under a waiver approved under section 1396n (b)(1) of this title,

and has failed substantially to provide medically necessary items and services that are required (under law or the contract with the State under subchapter XIX of this chapter) to be provided to individuals covered under that plan or waiver, if the failure has adversely affected (or has a substantial likelihood of adversely affecting) these individuals; or

(D) is an entity providing items and services as an eligible organization under a risk-sharing contract under section 1395mm of this title and has failed substantially to provide medically necessary items and services that

(i) who has a direct or indirect ownership or control interest of 5 percent or more in the entity or with an ownership or control interest (as defined in section 1320a–3 (a)(3) of this title) in that entity,

(ii) who is an officer, director, agent, or managing employee (as defined in section 1320a–5 (b) of this title) of that entity; or

(iii) who was described in clause (i) but is no longer so described because of a transfer of ownership or control interest, in anticipation of (or following) a conviction, assessment, or exclusion described in subparagraph (B) against the person, to an immediate family member (as defined in subsection (j)(1) of this section) or a member of the household of the person (as defined in subsection (j)(2) of this section) who continues to maintain an interest described in such clause—

is a person—

(B)

(i) who has been convicted of any offense described in subsection (a) of this section or in paragraph (1), (2), or (3) of this subsection;

(ii) against whom a civil monetary penalty has been assessed under section 1320a–7a or 1320a–8 of this title; or

(iii) who has been excluded from participation under a program under subchapter XVIII of this chapter or under a State health care program.

(9) Failure to disclose required information

Any entity that did not fully and accurately make any disclosure required by section 1320a–3 of this title, section 1320a–3a of this title, or section 1320a–5 of this title.

(10) Failure to supply requested information on subcontractors and suppliers

Any disclosing entity (as defined in section 1320a–3 (a)(2) of this title) that fails to supply (within such period as may be specified by the Secretary in regulations) upon request specifically addressed to the entity by the Secretary or by the State agency administering or supervising the administration of a State health care program—

(A) full and complete information as to the ownership of a subcontractor (as defined by the Secretary in regulations) with whom the entity has had, during the previous 12 months, business transactions in an aggregate amount in excess of $25,000, or

(B) full and complete information as to any significant business transactions (as defined by the Secretary in regulations), occurring during the five-year period ending on the date of such request, between the entity and any wholly owned supplier or between the entity and any subcontractor.

(11) Failure to supply payment information

Any individual or entity furnishing, ordering, referring for furnishing, or certifying the need for items or services for which payment may be made under subchapter XVIII of this chapter or a State health care program that fails to provide such information as the Secretary or the appropriate State agency finds necessary to determine whether such payments are or were due and the amounts thereof, or has refused to permit such examination of its records by or on behalf of the Secretary or that agency as may be necessary to verify such information.

(12) Failure to grant immediate access

Any individual or entity that fails to grant immediate access, upon reasonable request (as defined by the Secretary in regulations) to any of the following:

To a State medicaid fraud control unit (as defined in section 1396b (q) of this title), for the purpose of conducting activities described in that section.

(13) Failure to take corrective action

Any hospital that fails to comply substantially with a corrective action required under section 1395ww (f)(2)(B) of this title.

(14) Default on health education loan or scholarship obligations

Any individual who the Secretary determines is in default on repayments of scholarship obligations or loans in connection with health professions education made or secured, in whole or in part, by the Secretary and with respect to whom the Secretary has taken all reasonable steps available to the Secretary to secure repayment of such obligations or loans, except that

(A) the Secretary shall not exclude pursuant to this paragraph a physician who is the sole community physician or sole source of essential specialized services in a community if a State requests that the physician not be excluded, and

(B) the Secretary shall take into account, in determining whether to exclude any other physician pursuant to this paragraph, access of beneficiaries to physician services for which payment may be made under subchapter XVIII or XIX of this chapter.

(15) Individuals controlling a sanctioned entity

(A) Any individual—

(i) who has a direct or indirect ownership or control interest in a sanctioned entity and who knows or should know (as defined in section 1320a–7a (i)(6) [1] of this title) of the action constituting the basis for the conviction or exclusion described in subparagraph (B); or

(ii) who is an officer or managing employee (as defined in section 1320a–5 (b) of this title) of such an entity.

(B) For purposes of subparagraph (A), the term "sanctioned entity" means an entity—

(i) that has been convicted of any offense described in subsection (a) of this section or in paragraph (1), (2), or (3) of this subsection; or

(ii) that has been excluded from participation under a program under subchapter XVIII of this chapter or under a State health care program.

(16) Making false statements or misrepresentation of material facts

Any individual or entity that knowingly makes or causes to be made any false statement, omission, or misrepresentation of a material fact in any application, agreement, bid, or contract to participate or enroll as a provider of services or supplier under a Federal health care program (as defined in section 1320a–7b (f) of this title), including Medicare Advantage organizations under part C of subchapter XVIII, prescription drug plan sponsors under part D of subchapter XVIII, medicaid managed care organizations under subchapter XIX, and entities that apply to participate as providers of services or suppliers in such managed care organizations and such plans.

(c) Notice, effective date, and period of exclusion

(1) An exclusion under this section or under section 1320a–7a of this title shall be effective at such time and upon such reasonable notice to the public and to the individual or entity excluded as may be specified in regulations consistent with paragraph (2).

(2)

home health services and hospice care furnished to an individual under a plan of care established before the date of the exclusion,

until the passage of 30 days after the effective date of the exclusion.

(3)

(A) The Secretary shall specify, in the notice of exclusion under paragraph (1) and the written notice under section 1320a–7a of this title, the minimum period (or, in the case of an exclusion of an individual under subsection (b)(12) of this section or in the case described in subparagraph (G), the period) of the exclusion.

(B) Subject to subparagraph (G), in the case of an exclusion under subsection (a) of this section, the minimum period of exclusion shall be not less than five years, except that, upon the request of the administrator of a Federal health care program (as defined in section 1320a–7b (f) of this title) who determines that the exclusion would impose a hardship on beneficiaries (as defined in section 1320a–7a (i)(5) of this title) of that program, the Secretary may, after consulting with the Inspector General of the Department of Health and Human Services, waive the exclusion under subsection (a)(1), (a)(3), or (a)(4) of this section with respect to that program in the case of an individual or entity that is the sole community physician or sole source of essential specialized services in a community. The Secretary's decision whether to waive the exclusion shall not be reviewable.

(C) In the case of an exclusion of an individual under subsection (b)(12) of this section, the period of the exclusion shall be equal to the sum of—

(i) the length of the period in which the individual failed to grant the immediate access described in that subsection, and

(ii) an additional period, not to exceed 90 days, set by the Secretary.

(D) Subject to subparagraph (G), in the case of an exclusion of an individual or entity under paragraph (1), (2), or (3) of subsection (b) of this section, the period of the exclusion shall be 3 years, unless the Secretary determines in accordance with published regulations that a shorter period is appropriate because of mitigating circumstances or that a longer period is appropriate because of aggravating circumstances.

(E) In the case of an exclusion of an individual or entity under subsection (b)(4) or (b)(5) of this section, the period of the exclusion shall not be less than the period during which the individual's or entity's license to provide health care is revoked, suspended, or surrendered, or the individual or the entity is excluded or suspended from a Federal or State health care program.

(F) In the case of an exclusion of an individual or entity under subsection (b)(6)(B) of this section, the period of the exclusion shall be not less than 1 year.

(G) In the case of an exclusion of an individual under subsection (a) of this section based on a conviction occurring on or after August 5, 1997, if the individual has (before, on, or after August 5, 1997) been convicted—

(i) on one previous occasion of one or more offenses for which an exclusion may be effected under such subsection, the period of the exclusion shall be not less than 10 years, or

(ii) on 2 or more previous occasions of one or more offenses for which an exclusion may be effected under such subsection, the period of the exclusion shall be permanent.

(d) Notice to State agencies and exclusion under State health care programs

(1) Subject to paragraph (3), the Secretary shall exercise the authority under this section and section 1320a–7a of this title in a manner that results in an individual's or entity's exclusion from all the programs under subchapter XVIII of this chapter and all the State health care programs in which the individual or entity may

(A) Except as provided in subparagraph (B), the period of the exclusion under a State health care program under paragraph (2) shall be the same as any period of exclusion under subchapter XVIII of this chapter.

(B)

(i) The Secretary may waive an individual's or entity's exclusion under a State health care program under paragraph (2) if the Secretary receives and approves a request for the waiver with respect to the individual or entity from the State agency administering or supervising the administration of the program.

(ii) A State health care program may provide for a period of exclusion which is longer than the period of exclusion under subchapter XVIII of this chapter.

(e) Notice to State licensing agencies

The Secretary shall—

(1) promptly notify the appropriate State or local agency or authority having responsibility for the licensing or certification of an individual or entity excluded (or directed to be excluded) from participation under this section or section 1320a–7a of this title, of the fact and circumstances of the exclusion,

(2) request that appropriate investigations be made and sanctions invoked in accordance with applicable State law and policy, and

(3) request that the State or local agency or authority keep the Secretary and the Inspector General of the Department of Health and Human Services fully and currently informed with respect to any actions taken in response to the request.

(f) Notice, hearing, and judicial review

(1) Subject to paragraph (2), any individual or entity that is excluded (or directed to be excluded) from participation under this section is entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405 (b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405 (g) of this title, except that, in so applying such sections and section 405 (l) of this title, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

(2) Unless the Secretary determines that the health or safety of individuals receiving services warrants the exclusion taking effect earlier, any individual or entity that is the subject of an adverse determination under subsection (b)(7) of this section shall be entitled to a hearing by an administrative law judge (as provided under section 405 (b) of this title) on the determination under subsection (b)(7) of this section before any exclusion based upon the determination takes effect.

(3) The provisions of section 405 (h) of this title shall apply with respect to this section and sections 1320a–7a, 1320a–8, and 1320c–5 of this title to the same extent as it is applicable with respect to subchapter II of this chapter, except that, in so applying such section and section 405 (l) of this title, any reference therein to the Commissioner of Social Security shall be considered a reference to the Secretary.

(4) The provisions of subsections (d) and (e) ofsection 405 of this title shall apply with respect to this section to the same extent as they are applicable with respect to subchapter II. The Secretary may delegate the authority granted by section 405 (d) of this title (as made applicable to this section) to the Inspector General of the Department of Health and Human Services for purposes of any investigation under this section.

(g) Application for termination of exclusion

(1) An individual or entity excluded (or directed to be excluded) from participation under this section or section

) there is no basis under subsection (a) or (b) of this section or section 1320a–7a (a) of this title for a continuation of the exclusion, and

(B) there are reasonable assurances that the types of actions which formed the basis for the original exclusion have not recurred and will not recur.

(3) The Secretary shall promptly notify each appropriate State agency administering or supervising the administration of each State health care program (and, in the case of an exclusion effected pursuant to subsection (a) of this section and to which section 824 (a)(5) of title 21 may apply, the Attorney General) of the fact and circumstances of each termination of exclusion made under this subsection.

(h) "State health care program" defined

For purposes of this section and sections 1320a–7a and 1320a–7b of this title, the term "State health care program" means—

(1) a State plan approved under subchapter XIX of this chapter,

(2) any program receiving funds under subchapter V of this chapter or from an allotment to a State under such subchapter,

(3) any program receiving funds under division A [2] of subchapter XX of this chapter or from an allotment to a State under such division, or

(4) a State child health plan approved under subchapter XXI of this chapter.

(i) "Convicted" defined

For purposes of subsections (a) and (b) of this section, an individual or entity is considered to have been "convicted" of a criminal offense—

(1) when a judgment of conviction has been entered against the individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged;

(2) when there has been a finding of guilt against the individual or entity by a Federal, State, or local court;

(3) when a plea of guilty or nolo contendere by the individual or entity has been accepted by a Federal, State, or local court; or

(4) when the individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

(j) Definition of immediate family member and member of household

For purposes of subsection (b)(8)(A)(iii) of this section:

(1) The term "immediate family member" means, with respect to a person—

(A) the husband or wife of the person;

(B) the natural or adoptive parent, child, or sibling of the person;

(C) the stepparent, stepchild, stepbrother, or stepsister of the person;

(D) the father-, mother-, daughter-, son-, brother-, or sister-in-law of the person;

(E) the grandparent or grandchild of the person; and

(F) the spouse of a grandparent or grandchild of the person.

(2) The term "member of the household" means, with respect to any person, any individual sharing a common

# EXHIBIT J

## AGENCY COMPLIANCE REMINDER



Michigan Department of Health and Human Services
Program Policy Division
PO Box 30479
Lansing MI  48909

Michigan Department of Health & Human Services

April 10, 2018

ABUNDANT HEALTH HOME CARE LLC
269 Walker St Ste 332
Detroit, MI 48207

Dear Home Help Provider:

RE:  Home Help Agency Compliance Reminder

Agencies that provide services in the Medicaid Home Help program must be approved by the Michigan Department of Health and Human Services (MDHHS) as defined in current Home Help Agency policy.  Upon MDHHS approval, each agency is notified that they must submit further documentation within 120 days of approval or the agency will be removed from the approved agency provider list for the agency provider rate.

According to our records, your agency has not submitted the required documentation for approval to support the agency provider rate.  **This is a reminder that your agency has until May 10, 2018 to submit the required documentation.**

To continue receiving the agency rate, the following documents are needed:

- A letter identifying the agency owner and administrator, along with their contact information (to include address, phone number and E-mail information.)
- A copy of the most recent Employer's Quarterly Federal Tax Return (IRS-941) demonstrating that the Federal Insurance Contributions Act (FICA) tax is paid on a quarterly basis.
- A copy of the most recent Employer's Quarterly Wage/Tax Report (UIA-1028) or a similar form demonstrating the agency's payment of state unemployment insurance.
- Copies of W-4s for **all** agency caregivers who are <u>currently</u> providing services to Home Help beneficiaries.
- A list of **all** agency caregivers and agency employees who are <u>currently</u> providing services to Home Help beneficiaries, including their first and last name, date of birth, and the last four digits of their Social Security Number.  This list should match the providers currently listed in the Community Health Automated Medicaid Processing System (CHAMPS) and associated to the Home Help agency.

# CIVIL COVER SHEET

(8/17)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mario Miles
by of and though ABUNDANT HOME HEALTH CARE LLC.

**DEFENDANTS** STATE OF MICHIGAN,
MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES
Mary Rossman, Kathleen Stiffler, Michelle Martin. Et Al

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Case:2:18-cv-12295
Judge: Friedman, Bernard A.
MJ: Davis, Stephanie Dawkins
Filed: 07-23-2018 At 11:40 AM
CMP ABUNDANT HEALTH HOME CARE LLC V
STATE OF MICHIGAN, ET AL (LG)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For L...)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | PROPERTY RIGHTS | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | | | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | LABOR | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| | | | | | ❏ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | FEDERAL TAX SUITS | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ☒ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | IMMIGRATION | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Deprivation of Rights under color of State Law

Brief description of cause:
State enforcing policy contrary to its own statues involation of Federal Law and causing irreparable harm to Agency

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ❏ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE                          DOCKET NUMBER

DATE
07/23/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

~~ANT TO LOCAL RULE 83.11~~

Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.    Other than stated above, are there any pending or previously
      discontinued or dismissed companion cases in this or any other
      court, including state court? (Companion cases are matters in which
      it appears substantially similar evidence will be offered or the same
      or related parties are present and the cases arise out of the same
      transaction or occurrence.)

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :