UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO MILES, et al.,

    Plaintiffs,                                            Civil Action No. 18-CV-12295

vs.                                                     HON. BERNARD A. FRIEDMAN

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES, et al.,

    Defendants.
_____/

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is presently before the Court on defendants' motion to dismiss [docket entry 16]. Plaintiffs[1] have filed a response in opposition. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

Plaintiffs Mario Miles and Abundant Health Home Care LLC ("AHHC") allege in their amended complaint that defendants Michigan Department of Health and Human Services ("MDHHS") and its directors and other officials[2] have violated their rights by reducing the hourly rate that MDHHS will pay AHHC for providing home care services. Specifically, plaintiffs allege:

> 1. On or about the third week of April 2018 ABUNDANT HEALTH HOME CARE LLC did receive a letter from MDHHS titled Home Help Agency Compliance Reminder.

---

[1] While the caption of the amended complaint lists Mario Miles and Abundant Health Home Care LLC as plaintiffs, the Court has dropped the business entity as a party due to its failure to have counsel enter an appearance on its behalf. Therefore, the only plaintiff remaining in this case is Miles.

[2] In addition to MDHHS itself, plaintiffs have named as defendants MDHHS Director Nick Lyon; MDHHS Superintendent Mary Rossman; HDHHS Acting Directors Kathleen Stiffler, Stephen Fitton, and Chris Priest; and MDHHS Policy Director Michelle Martin.

2. The letter stated that my agency had until May 10, 2018 to be in compliance with the new policy guidelines listed in (EXHIBIT A) MSA Bulletin # 18-09 in order for my agency to continue to receive the agency provider hourly rate.

3. I immediately contacted the MDHHS to express my concerns about my inability to meet their time line as well as the compliance due the financial hardship it would cause the gentleman on the phone took my information and told me he would have someone that could answer my questions give me a call back.

4. I received a call back a few days later from a female agent of MDHHS and was told that I was given an extension and had until July 1, 2018 to comply, I then asked the agent how do I file an appeal or who could I speak with regarding the right to appeal this new policy listed in MSA Bulletin # 18-09 (EXHIBIT A) and was told no one, and if I was not in compliance by July 1, 2018 my agency would either receive the individual hourly rate or be dis-enrolled all together.

5. I responded to the agent if I comply with your policy I'm out of business and if I don't comply I'm out of business this is not right and hung up the phone, After further research into new policy being enacted I learned that the MDHHS enacted (EXHIBIT B) MSA Bulletin # 17-32 on September 29, 2017 to become effective on November 1, 2017 seeking to freeze agency pay rates at the rates published as of January 1, 2017, notwithstanding prior rules that set the Michigan program Agency rate at 170% to 200% of minimum wages in 2008 and 2009 and an immediately pending increase in state minimum wages or other past minimum wage increases applicable to the Agencies' individual care workers.

6. Plaintiff is being forced under threat duress and coercion by the MDHHS and its agents to convert all home care contractors into employees pursuant to the unlawful new policy guidelines listed in (EXHIBIT A) MSA Bulletin # 18-09 and MSA Bulletin # 17-32 in order for agency to continue to receive the agency provider hourly rate of $13.50.

7. If plaintiff complies with the unlawful demands of the MDHHS and its agent's plaintiff/agency will suffer irreparable harm as the agency will immediately become insolvent due to the excessive financial liability of insurance, taxes and other financial requirement that the agency is being compelled to comply with it will diminish

> profits causing the complete destruction of the agency.... See Exhibit D financial proof of insolvency resulting from implementation of new policies.
>
> 8. If plaintiff refuses to comply with the unlawful demands of the MDHHS and its agents the agencies pay will be reduced from the agency rate of $13.50/hr to a rate of $9.25/hr.
>
> 9. Plaintiff affirms and asserts that the agency has an obligation via contract to pay its contractors a pay rate of $10.00/hr.
>
> 10. The reduction in pay by the MDHHS and its agents will cause the agency to suffer irreparable harm as this action of the MDHHS and its agents would diminish all profits and create an automatic condition of insolvency and a complete destruction of the agency/business.

Am. Compl. ¶¶ 1-10. Plaintiffs assert claims for "impairing the obligation to contract," due process violations, ultra vires acts, restraint of trade, violation of the right to earn a living, breach of contract, unconscionable contract, deprivation of rights under color of law, violation of equal protection, and violation of equal rights. For relief, plaintiffs ask that the Court enjoin defendants from enforcing the MSA bulletins; declare, among other things, that the bulletins are unenforceable, that the applicable agency rate is 170-200% of the individual rate, and that home help care agencies may continue to contract with care providers; and "grant such further relief as this court deems fair, just, and equitable." *Id.* at 25. In their response to defendants' motion to dismiss, plaintiffs demand $6.945 million in damages.

Defendants seek dismissal of the complaint on various grounds, including plaintiffs' failure to state a claim upon which relief can be granted. In deciding a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court may consider the complaint itself and "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the

claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

In the present case, the April 2018 letter from MDHHS, to which plaintiffs refer in ¶ 1 of their amended complaint, reveals that AHHC's inability to receive the "agency provider rate" had nothing to do with plaintiffs' failure or inability to comply with MSA Bulletin 18-09, which was not issued until May 1, 2018. *See* Am. Compl. Ex. A. Rather, in its April 10, 2018, letter, MDHHS noted that AHHC had not submitted "the required documentation for approval to support the agency provider rate." Defs.' Ex. L at 1. This letter gave AHHC until May 10, 2018, to submit five documents that were required in order for it to receive the agency rate (i.e., a letter identifying AHHC's owner and administrator, verification that AHHC had made its most recent FICA and unemployment insurance payments, W-4s for all agency caregivers, and a list of its caregivers and employees).[3] In a follow-up letter to AHHC dated May 10, 2018 (referred to in ¶ 2 of the amended complaint), MDHHS noted that AHHC still had not submitted the required documents. Defs.' Ex. M at 1. Consequently, MDHHS notified AHHC that it "will no longer be on the approved agency list effective July 2, 2018 [and] . . . your agency will no longer qualify to receive the agency rate as of this date." *Id.* This letter also notified AHHC of its right to request an administrative hearing within thirty days, and provided contact information "[i]f you wish to re-establish your eligibility and become an approved agency." *Id.* Plaintiffs do not allege that they availed themselves of this remedy.

These letters conclusively demonstrate that AHHC's removal from the "approved agency list" was due to plaintiffs' failure to provide MDHHS with documentation having nothing

---

[3] In fact, this letter indicates that these documents were due "within 120 days of approval." Defs.' Ex. L at 1. MDHHS approved AHHC as a Home Help agency provider effective November 10, 2017. *See* Defs.' Ex. K.

4

to do with any "new policy listed in MSA Bulletin # 18-09," as alleged in ¶ 4 of the amended complaint. Rather, AHHC's removal from that list, and its relegation to receiving the lower "individual provider rate," was due to plaintiffs' own failure to submit documents during a time before that bulletin was issued. Under these circumstances, plaintiffs have stated no claim for relief that is conceivably related to MSA Bulletin 18-09.[4]

Even if plaintiffs had stated a claim upon which relief could be granted, the Court would nonetheless be compelled to dismiss the amended complaint because defendants are immune from suit under the Eleventh Amendment.[5] States, state departments, and state officials acting in their official capacity are immune from suit in federal court. *See Alabama v. Pugh*, 438 U.S. 781 (1978); *Harrison v. State of Mich.*, 722 F.3d 768, 771 (6th Cir. 2013). An exception is recognized that "permits federal courts to enjoin state officials from the future enforcement of state legislation that violates federal law. Under the exception, 'a federal court's remedial power . . . is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury.'" *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)). However, even prospective injunctive

---

[4] Nor have plaintiffs stated a claim for relief based on MSA Bulletin 17-32, which provided only that "[a]s of November 1, 2017, the agency rates published on January 1, 2017 will remain in effect until further notice" and that "[f]uture agency rate changes will be based upon legislative appropriations and the necessity to maintain rates that support access to qualified providers." Am. Compl. Ex. B. Plaintiffs do not allege that defendants changed the agency rates. Rather, as noted above, AHHC lost the ability to receive payment at those rates due to plaintiffs' failure to submit required documents.

[5] While plaintiffs correctly note that Congress has on occasion waived states' Eleventh Amendment immunity (e.g., for certain suits brought under the Americans with Disabilities Act or the Rehabilitation Act), *see* Pls.' Resp. to Defs.' Mot. to Dismiss at 17, no such waiver exists that would permit plaintiffs suit in the present case.

5

relief is barred when monetary relief "is the primary thrust of the suit." *Barton v. Summers*, 293 F.3d 944, 949 (6th Cir. 2002).

In the present case, plaintiffs seek nearly $7 million in compensatory and punitive damages. *See* Pls.' Resp. to Defs.' Mot. to Dismiss at 18-19. And the purpose of the purportedly non-monetary, declaratory and injunctive relief they seek is to "[c]ompel the Department to pay the Agencies at the established rate of 170 to 200% of minimum wage." Am. Compl. at 25 ¶ D. As the "primary thrust" of this lawsuit is to obtain money damages for past losses and a pay raise in the future, defendants are plainly entitled to Eleventh Amendment immunity. Accordingly,

IT IS ORDERED that defendants' motion to dismiss is granted.

s/Bernard A. Friedman
Dated: October 3, 2018          BERNARD A. FRIEDMAN
Detroit, Michigan               SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2018.

s/Johnetta M. Curry-Williams
Case Manager